# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIMOTHY LEE SOLLOWAY,

Defendant-Appellant.

FOR PUBLICATION
June 30, 2016
9:05 a.m.

No. 324559
Cass Circuit Court
LC No. 13-010217-FC

Before: SERVITTO, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), and two counts of failing to comply with the Sex Offender Registration Act (SORA), MCL 28.721, *et seq.*, MCL 28.729. The trial court sentenced him as a fourth habitual offender, MCL 769.12, to life imprisonment on the CSC I conviction and concurrent terms of three to seven years' imprisonment on each of the failing to comply convictions, with credit for 464 days served. We vacate defendant's convictions for failing to comply with SORA and affirm in all other respects.

## FACTS

On the morning of July 22, 2013, defendant's then-nine year-old son "MM" rode the bus from summer school to defendant's residence, where he was supposed to spend the remainder of the summer. That evening, MM fell asleep in the bedroom of defendant's one-bedroom apartment with his pajamas on, and defendant went to bed in the living room. According to MM, he woke up during the night with defendant on top of him and MM no longer had his pajamas on. MM testified that defendant was facing him and "shaking up and down." MM told defendant to get off, but defendant said, "No." Eventually, MM saw defendant unzip his pants and "stick his peebug[1] out." Defendant then "flipped [MM] over" and "put his peebug in [MM's] butt." Although MM testified that he experienced pain "on [his] butt" that day, he did not tell anyone what happened.

---

[1] It was established at trial through multiple witnesses that MM uses the word "peebug" to refer to a penis.

-1-

Two days after the incident, MM noticed some rectal bleeding after he went to the bathroom at school. MM told his teacher that he was bleeding. His teacher sent him to the principal, who thereafter called MM's mother, Tricia Fuzi (defendant's ex-wife), to pick MM up. While MM was waiting for Fuzi, a police officer came to talk to him at school. MM told the officer that he was "bleeding from [his] butt" and that he had just been "molested [by defendant] a couple of days" before. Thereafter, Fuzi arrived at the school with MM's grandpa and stepfather, and they took MM directly to the hospital. On the way, MM told the three of them what had happened. A physical examination of MM at the hospital revealed injuries consistent with his account of the sexual assault.

After speaking with MM, police ran defendant's record and found that he was currently on probation, and had been previously convicted of fourth-degree criminal sexual conduct (CSC IV), MCL 750.520e. Defendant was thus required to register under the SORA and verify his information, including all telephone and e-mail addresses used. Officers, along with defendant's probation officer, went to defendant's apartment, explained to him why they were there, read defendant his *Miranda*[2] rights, which defendant waived, and received defendant's consent to search the residence. During the search, officers seized several items, including two cellular telephones. Defendant told the officers that he used one of the cellular telephones for calls, and it was registered in a relative's name and that the other cellular telephone used to have cellular service, but it no longer did. Defendant stated that he only used this second cellular telephone for Internet, and he admitted he searched for pornography on it. Defendant also admitted during the investigation in this case that he had an email account in his father's name, but he did not register it.

At trial, defendant denied the allegations that he committed any sexual assault toward the victim. With respect to the SORA violations, defendant admitted that he was guilty of having an email address that his probation officer or other public safety officers did not know about. He also admitted, with respect to one of the cellular telephones, that his status as a sex offender prohibited him from using this cellular telephone to access pornography. As previously indicated, the trial court convicted defendant of CSC I and two counts of failing to comply with SORA.

### CSC I CONVICTION: SUFFICIENCY/GREAT WEIGHT OF EVIDENCE

On appeal, defendant first contends that there was insufficient evidence to support his conviction for CSC I or, alternatively, that the verdict was against the great weight of the evidence. We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). This Court must determine whether the evidence was sufficient to justify a rational trier of fact's conclusion that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). In determining whether sufficient evidence was presented

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). All conflicts in the evidence must be resolved in favor of the prosecution, *id.* at 515, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime, *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

A defendant is guilty of CSC I, MCL 750.520b(1)(a), if he or she engaged in sexual penetration with the victim, and the victim was less than 13 years old. *People v Hack*, 219 Mich App 299, 303; 556 NW2d 187 (1996). "Sexual penetration" is defined by statute as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body . . . ." MCL 750.520a(r).

The victim's age is not contested by either party. It was well established at trial that MM was nine years old at the time of the sexual assault. Thus, the only issue under defendant's sufficiency challenge is whether the evidence was sufficient to establish beyond a reasonable doubt that defendant engaged in sexual penetration with MM. *Hack*, 219 Mich at 303. Here, MM testified in great detail as to the sexual assault. He testified that he woke up to defendant on top of him, "shaking up and down." MM testified that defendant then flipped him over and "put his peebug in [MM's] butt." MM explained that he could feel defendant's "peebug" in his body. In criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated. *People v Brantley*, 296 Mich App 546, 551; 823 NW2d 290 (2012); MCL 750.520h. Given MM's testimony, the evidence, when viewed in a light most favorable to the prosecution, was sufficient to support the trial court's finding that sexual penetration occurred beyond a reasonable doubt.

Defendant challenges MM's credibility. However, witness credibility is a question for the factfinder, and this Court does not interfere with the factfinder's role. *Wolfe*, 440 Mich at 514-515. Moreover, even though it is not necessary for a criminal sexual conduct conviction, there was evidence presented that corroborated MM's testimony. For instance, Mindy O'Brien, the sexual assault nurse examiner who examined MM at the hospital, testified that MM suffered tearing and rawness in his anal area that was consistent with his claims, and DNA evidence revealed that defendant's semen was located on a white fleece blanket taken from MM's bed. Further, there was testimony by defendant's nephew, Kirt Shepard, that when he had resided with defendant for several years, until he was approximately nine years old, defendant had touched him inappropriately in his genital area many times with his hand and his body. Shepard testified that defendant would wake him up in the middle of the night to perform these assaults. With respect to this conduct, defendant ultimately pleaded guilty and was convicted of CSC IV and defendant admitted in his testimony at trial that he committed the sexual abuse toward

Shepard. The fact that defendant committed a previous sexual assault against his similarly aged nephew—albeit "sexual contact,"[3] not penetration—also supports MM's testimony.

The verdict on defendant's CSC I conviction was also not against the great weight of the evidence. A verdict is against the great weight of the evidence and a new trial should be granted when "the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *Brantley*, 296 Mich App at 553, quoting *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998) (internal quotation marks omitted). Generally, a verdict may only be vacated when the verdict is not reasonably supported by the evidence, but rather it "is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). Questions regarding credibility are not sufficient grounds for relief *unless* the "testimony contradicts indisputable facts or laws"; the "testimony is patently incredible or defies physical realities"; the "testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror"; or the "testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *Lemmon*, 456 Mich at 643-644 (citations and internal quotation marks omitted).

The trial court found that MM was less than 13 years old when defendant entered his bedroom at night, got on top of him, and eventually inserted his penis into MM's anal opening. The trial court found that MM's testimony of this assault was "very clear and very credible." The trial court found that O'Brien's testimony of the victim's injuries was consistent with the victim's account of the sexual assault. In particular, the trial court noted O'Brien's testimony that the victim's injuries, as a whole, were "inconsistent with difficult bowel movements" as defendant attempted to claim. Each of the trial court's findings is supported by the evidence. Thus, defendant failed to establish that the evidence "preponderate[d] heavily" against the trial court's verdict. *Brantley*, 296 Mich App at 553.

In sum, we find that sufficient evidence was presented to sustain defendant's CSC I conviction, and the verdict was not against the great weight of the evidence. Thus, defendant's CSC I conviction is affirmed.

SORA CONSTITUTIONALITY CHALLENGE

Next, defendant challenges his convictions for failing to comply with SORA. Defendant argues that his convictions under SORA must be vacated because the provisions under which he was convicted were found unconstitutionally vague by a federal district court. See *Doe v Snyder*, 101 F Supp 3d 672 (2015). "This Court reviews de novo a challenge to a statute's

---

[3] "Sexual contact" is defined as including "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ." MCL 750.520a(q).

constitutionality under the void-for-vagueness doctrine." *People v Vronko*, 228 Mich App 649, 651-652; 579 NW2d 138 (1998).

Notably, the holding in *Doe* is not binding on this Court, although it may be considered persuasive. See *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013) ("Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis."). Because *Doe* is not binding authority on this Court, see *id.*, despite the Attorney General's concession that defendant's convictions must be vacated because *Doe* declared the relevant SORA provisions unconstitutionally vague, to address defendant's argument, this Court must consider whether the SORA provisions under which defendant was convicted are, in fact, unconstitutionally vague. We find that they are.

When a statute is challenged on constitutional grounds, it "is presumed to be constitutional and will be construed as such unless its unconstitutionality is clearly apparent." *Vronko*, 228 Mich App at 652. A statute may be determined to be "unconstitutionally vague" when "(1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed or (3) its coverage is overly broad and impinges on First Amendment Freedoms." *Id.* A statute will not be found vague "if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or their generally accepted meaning." *Id.* at 653.

Defendant's convictions for failing to comply with SORA arise out of MCL 28.727(1)(h) and (i). These two provisions provide that defendant must report the following under SORA:

> (h) All telephone numbers registered to the individual or routinely used by the individual.

> (i) All electronic mail addresses and instant message addresses assigned to the individual or routinely used by the individual and all login names and other identifiers used by the individual when using any electronic mail address or instant messaging system. [MCL 28.727(1)(h) and (i).]

In challenging the constitutionally of these provisions in *Doe*, the plaintiffs argued that the phrase "routinely used"—found in both provisions—was unconstitutionally "vague and undefined." *Doe*, 101 F Supp 3d at 686. Quoting *Webster's Third New International Dictionary* (3d ed), the *Doe* court defined "routine" as "a standard practice," "the habitual method of performance of established procedures," and "of a commonplace or repetitious character." *Id.* at 688 (internal quotation marks omitted). The federal district court found that while the term "routinely" suggested that "some degree of normal repetition" was necessary, its meaning was not "sufficiently concrete" to provide fair notice of the proscribed conduct or provide standards for law enforcement to administer the reporting requirements. *Id.* The court additionally found that the ambiguity could leave "registrants of ordinary intelligence unable to determine when the reporting requirements are triggered." *Id.* at 690-691. Accordingly, the court held that the requirements to report telephone numbers and email addresses routinely used by the individual under MCL 28.727(1)(h) and (i) were unconstitutional and the provisions' "enforcement [are] enjoined." *Id.* at 713.

-5-

The explanation of the void-for-vagueness doctrine was enunciated by the United States Supreme Court in *Grayned v City of Rockford*, 408 US 104, 108–109; 92 S Ct 2294; 33 L Ed 2d 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of (those) freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone'. . . than if the boundaries of the forbidden areas were clearly marked." [citations omitted]

In this case, the phrase "routinely used" as found in MCL 28.727(1)(h) and (i) renders those statutory provisions vague. We find the analysis in *Doe*, *supra*, persuasive. Given the dictionary definition of "routinely," as discussed in that case, it is evident that law enforcement officers and judges could hold different views of how often a telephone number or email address must be used by an individual to be "routinely used" under the statute. We thus agree with the holding in *Doe* and find that the provisions under which defendant was convicted are unconstitutionally vague.[4]

Thus, defendant's convictions for failing to comply with SORA are vacated.[5]

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends, in both his appellate and Standard 4 brief[6], that he was denied the effective assistance of counsel. We disagree.

---

[4] We note that the Senate has passed a bill which proposes amending SORA, including the provisions as issue, which would serve to eliminate the phrase "routinely used by the individual" from MCL 28.727(1)(h) and (i). See 2015 Michigan Senate Bill No. 581. The proposed amendment would also add an additional requirement concerning the reporting of electronic mail addresses and defines the phrase "routinely used." See 2015 Michigan Senate Bill No. 581.

[5] It is worth noting that the Attorney General does not contest the federal district court's pertinent holdings in *Doe* and that "the People waive argument on Solloway's SORA convictions and will not pursue enforcement of those claims on appeal."

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id.* However, because defendant's motion for a new trial and request for a *Ginther*[7] hearing were denied, no factual record was created with respect to defendant's claim, and this Court's review is limited to mistakes apparent on the lower court record. *People v Fike*, 228 Mich App 178, 181; 577 NW2d 903 (1998).[8]

To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). Counsel's performance should be evaluated at the time of the alleged error without the benefit of hindsight. *People v Grant*, 470 Mich 477, 487; 684 NW2d 686 (2004). A defendant must overcome a strong presumption that counsel's actions constituted sound trial strategy. *Carbin*, 463 Mich at 600.

Defendant argues that defense counsel was ineffective for a laundry list of reasons, none of which have merit. Of significant importance, defendant provides no factual support and little, if any, legal support for his claims. Defendant simply argues that the stated actions fell below an objective standard of reasonableness and prejudiced his case. However, "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant failed to meet his burden here with respect to all of his allegations. Therefore, this Court could find, for this reason alone, that defendant's claims of ineffective assistance of counsel fail. We will nevertheless briefly address defendant's primary allegations of error.

First, we find that nothing in the record suggests that defense counsel failed to conduct a thorough investigation before trial, as claimed by defendant. Defense counsel presented three witnesses, including defendant, who testified in support of the defense theory. Defense counsel also appeared prepared to cross-examine each witness presented by the prosecution, and he attempted to attack MM's credibility and provide alternative explanations for the physical evidence that corroborated MM's account of the sexual assault.

Second, "[d]ecisions regarding . . . whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Thus, whether defense counsel should have (1) presented the victim's counselor as a witness, (2) consulted or produced an expert medical witness, or (3) presented "layman testimony" that

---

[6] See, Administrative Order 2004–6, Standard 4.

[7] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[8] Moreover, although defendant moved the trial court for a new trial and requested a *Ginther* hearing, he did not do so on the grounds that he argues in his Standard 4 brief.

would establish Fuzi had coerced MM into making false accusations against defendant in the past were matters of trial strategy. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant does not argue why it was necessary for defense counsel to procure an expert medical witness to testify at trial, nor does he explain how the missing testimony of MM's counselor would have assisted his case or what the missing testimony would have been. Because defendant fails to explain what this missing testimony would have been or how it would have assisted his case, he has not demonstrated that defense counsel's failure to procure an expert medical witness or call MM's counselor as a witness contravened trial strategy and deprived him of a substantial defense. *Rockey*, 237 Mich App at 76; *Dixon*, 263 Mich App at 398.

Third, defense counsel did, in fact, pursue the theory at trial that MM was coerced into making allegations against defendant. Defense counsel attempted to elicit testimony from Fuzi and Justin Pangle (a tribal police officer), two lay witnesses, which could have potentially supported his defense theory and additionally presented Cynthia Lunk as a lay witness in support of this coercion theory. The fact that defendant's strategy was ultimately unsuccessful does not render him ineffective. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). Moreover, defendant fails to identify on appeal any other lay witness who defense counsel should have produced who would have been able to testify further in this regard.

Lastly, defense counsel was not ineffective for failing to produce MM's medical records. The decision of what evidence to present is also presumed to be a matter of trial strategy. *Rockey*, 237 Mich App at 76. At trial, medical records from MM's examination were admitted through O'Brien's testimony. On appeal, defendant does not point to any other medical records that would have been relevant to the instant case. Ostensibly, defendant wanted defense counsel to produce MM's medical records relating to his alleged bowel movement problems; however, defendant fails to establish that these medical records even exist. Therefore, defendant has not overcome the presumption of trial strategy with respect to the production of this evidence. See *id.*

Even if, for the sake of argument, this Court had found that counsel's performance was deficient for any of the aforementioned reasons, defendant is not entitled to relief unless he meets the burden of establishing prejudice. *Carbin*, 463 Mich at 600. Defendant is required to show that trial counsel's performance prejudiced him so as to deprive him of a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). None of the alleged errors by defense counsel would have affected the outcome of trial. MM, who the trial court found to be "very clear and very credible," provided a detailed account of the sexual assault. Physical evidence was presented of MM's injuries and defendant's semen was found on a blanket from MM's bed. Defendant's nephew's testimony that defendant committed a similar sexual assault against him when he was nine years old also supported the trial court's verdict in this case. Thus, in light of the overwhelming evidence against defendant, he is unable to establish a reasonable probability that the outcome of his trial would have been different but for the alleged errors. *Carbin*, 463 Mich at 600.

OTHER ACTS EVIDENCE

Defendant next contends that the trial court erred in admitting irrelevant and prejudicial other acts evidence. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for a clear abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). An abuse of discretion is found when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Murphy (On Remand)*, 282 Mich App 571, 578; 766 NW2d 303 (2009). A preserved trial error in the admission of evidence does not constitute grounds for reversal "unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

Under MCL 768.27a, "in a criminal case in which the defendant is accused of committing a listed offense[9] against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." This allows prosecutors to offer evidence of another sexual offense committed by a defendant against a minor without having to justify its admission under MRE 404(b). *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007).

Here, the prosecutor offered evidence of defendant's prior act against his nephew, Shepard, when the nephew was nine years old. Defendant was convicted of CSC IV, MCL 750.520e, as a result of this conduct which, when committed against a minor less than 13 years of age is a "listed offense" for purposes of applying MCL 768.27a. See MCL 28.722(j) and (w)(*vi*). At trial, Shepard testified that defendant touched him inappropriately when he was nine years old and living with defendant. Shepard testified that defendant would come into his room in the middle of the night and wake him up and that he found defendant on top of him, rubbing against him in an "up and down motion, penis to penis." Finally, Shepard testified that defendant told him that he would beat him up if he ever told anyone.

This other-acts evidence was, as conceded by defendant, relevant to matters at trial. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Under MCL 768.27a, evidence is relevant, and therefore admissible, when offered to show the defendant's propensity to commit the charged crime. *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012) (indicating that MCL 768.27a permits admission of evidence that would generally be precluded by MRE 404(b)). Accordingly, in the present case, evidence of defendant's sexual offense against Shepard—who, notably, was related to defendant and nine years old at the time—"ma[de] it more probable that he committed the charged offense" against MM, who was also related to defendant and the same age as defendant's nephew at the time of the assault. *Id*. Moreover, the evidence was also relevant to MM's credibility. See, e.g., *People v Mann*, 288 Mich App 114, 118; 792 NW2d 53

---

[9] Violations of MCL 750.520b are included as "listed offenses." MCL 28.722(j) and (w)(*iv*).

(2010). The fact that defendant committed a similar crime against Shepard made it more probable that MM was telling the truth. See *id.* Thus, the challenged evidence was relevant and had a high probative value in the instant case.

The crux of defendant's argument is that the evidence should have been excluded under MRE 403 because of its prejudicial nature. Relevant evidence that is admissible under MCL 768.27a may still be excluded under MRE 403. *Watkins*, 491 Mich at 481. Evidence may be excluded under MRE 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *People v Sabin (After Remand)*, 463 Mich 43, 58; 614 NW2d 888 (2000). "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference *in favor of* the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487 (emphasis added). The *Watkins* Court provided an illustrative list of considerations for courts to assess in determining whether such evidence should be excluded:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability to the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id.* at 487-488.]

Here, looking at "the dissimilarity between the other acts and the charged crime," see *id.*, the acts are not so dissimilar as to preclude admission of the other-acts evidence. In fact, defendant admits that his conduct against Shepard and the charged offense against MM were similar. He argues that the *similarity* between the acts is what makes the other-acts evidence so prejudicial. However, the similarities between Shepard's testimony and MM's testimony weigh in favor of admission. MM and Shepard were close in age at the time defendant sexually assaulted them, and defendant was related to both of them. Defendant committed the offenses against MM and Shepard at a time when each of them was living with him. Finally, both the prior act and the charged offense involved defendant entering the victim's bedroom in the middle of the night, climbing on top of him, and engaging in some sort of inappropriate touching. The fact that defendant did not engage in penetration with Shepard, but did with MM, does not make the acts so dissimilar so as to preclude admissibility. Therefore, this factor weighs in favor of the evidence's admission.

As to the temporal proximity between the prior act and the charged offense, see *Watkins*, 491 Mich at 487-488, the prior act concerning Shepard occurred in 2001, approximately 12 years before the charged crime. While the acts occurred some years apart, given how similar the acts are, the temporal divide between their occurrences, standing alone, does not preclude the evidence's admission.

Third, looking at the infrequency of the other acts, see *Watkins*, 491 Mich at 487-488, this factor did not preclude admission of the evidence. Shepard testified that defendant touched him inappropriately multiple times; it was not a one-time occurrence. Thus, it cannot be said that the other acts occurred so infrequently to support exclusion of the evidence.

Fourth, looking at the presence of intervening acts, see *Watkins*, 491 Mich at 487-488, there do not appear to be any intervening acts that would weigh against the admissibility of the other-acts evidence.

Fifth, considering "the lack of reliability to the evidence supporting the occurrence of the other acts," see *id.*, this factor also did not preclude admission of the evidence. Defendant made no argument on appeal or in the trial court that Shepard was an unreliable witness. In fact, Shepard's reliability is supported by the fact that defendant pleaded guilty to CSC IV with respect to his conduct against Shepard. Thus, this fifth factor does not weigh against the admissibility of the other-acts evidence.

Finally, considering "the lack of need for evidence beyond the complainant's and defendant's testimony," see *id.*, this factor did not preclude admission of the evidence. On one hand, this Court could find that there was not a need for testimony beyond that of MM and defendant in this case because of the physical evidence of sexual abuse that was presented. However, because of the nature of the crime, there were no eyewitnesses to support MM's allegations. And, through cross-examinations and defendant's testimony, defendant attempted to provide alternative explanations for the existence of the physical evidence. For instance, it was defendant's position that MM's injuries resulted from his bowel movements and that defendant's semen appeared on the white blanket because he masturbated on it. Thus, because there were no eyewitnesses to corroborate MM's testimony and to refute defendant's theories in regard to the physical evidence of the crime, there was a need for evidence beyond MM's and defendant's testimony.

In light of the foregoing, the *Watkins* factors weigh heavily in favor of the admissibility of the other-acts evidence. Therefore, the trial court did not abuse its discretion by admitting the other-acts evidence.

OBJECTIONS BY PROSECUTION

Defendant next argues that the trial court violated the rule of completeness, and denied him the right to present a defense and the right to trial by an impartial judge due, in part, to the trial court's sustaining of objections by the prosecution to certain cross-examination questions of Fuzi and to certain questions asked on direct examination of Justin Pangle, a tribal police officer.[10] We disagree.

In order to preserve an issue for appellate review, it must be raised before and considered by the trial court. *People v Connor*, 209 Mich App 419, 422; 531 NW2d 734 (1995). Defendant opposed the prosecutor's objections to Fuzi's and Pangle's testimony in the trial court below. However, defendant failed to argue at that time whether, by sustaining the prosecutor's

---

[10] Although defendant includes an ineffective assistance of counsel argument in his statement of questions presented under this issue, defendant completely fails to make an ineffective assistance argument in his analysis. Therefore, this argument is wholly abandoned, and we do not consider it. See *Kevorkian*, 248 Mich App at 389.

objections, the trial court denied defendant his constitutional right to present a defense and violated the rule of completeness. An objection on one ground is not sufficient to preserve an issue on a different ground. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Thus, neither issue is preserved for appeal, and this Court's review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. To obtain relief, it must be found that (1) an error occurred, (2) the error was plain or obvious, and (3) the plain error affected the defendant's substantial rights. *Id.* The defendant bears the burden of establishing that his substantial rights were affected. *Id.* at 763. Additionally, to be entitled to reversal, the defendant must show that the "error resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id* (internal quotation mark omitted).

A criminal defendant has a due process right to present a defense under the state and federal constitutions. *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002). But, the right to present a defense is not absolute. *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984). The defendant "must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *Id.*, quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Thus, the right to present a defense "extends only to relevant and admissible evidence." *People v Likine*, 288 Mich App 648, 658; 794 NW2d 85 (2010), rev'd on other grounds 492 Mich 367 (2012).

Here, defendant's argument that he was denied his right to present a defense is based on the trial court's preclusion of certain testimony from Fuzi and Pangle. As a prefatory matter, defendant does not make any argument concerning the admissibility of this evidence. Rather, he merely asserts that he was denied his constitutional right to present a defense by the trial court's preclusion of it. Because defendant fails to rationalize the basis of his argument, this Court could find it abandoned. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Defendant's argument fails on the merits in any event.

Fuzi was asked during cross-examination whether she had ever made allegations that the victim was molested before the charged offense occurred in July 2013. Before Fuzi answered, the prosecutor objected on the basis of hearsay, and the trial court sustained the objection. Under MRE 801(c), "hearsay" is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay evidence is inadmissible unless it falls within one of the exceptions listed in the Michigan Rules of Evidence. MRE 802; *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013).

Fuzi's testimony was not inadmissible hearsay because her testimony was not being offered for the truth of the matter asserted. The question posed by defendant to Fuzi asked her to testify about an out-of-court statement that she made, namely whether she had previously alleged that MM was molested before the charged offense occurred. Even though her previous allegation would be an "unsworn, out-of-court statement," it was not offered by defendant to prove the truth of the matter asserted. See MRE 801(c); *Musser*, 494 Mich at 350. That is, defendant did not offer Fuzi's testimony to establish that MM was previously molested. Rather, it seems that defendant was offering Fuzi's testimony to attack MM's credibility by showing that

-12-

similar, uncharged allegations had been made in the past. Preclusion of this testimony based on hearsay grounds was thus in error. However, defendant cannot show that the plain error in the preclusion of Fuzi's testimony affected his substantial rights.

Defendant argues that excluding this evidence deprived the trial court of all the "tools" it needed to assess the evidence. But, even though Fuzi was precluded from testifying to these previous allegations, *defendant* was permitted to testify about them. In particular, defendant testified that there were allegations made in the summer of 2012 that he molested MM, but he did not get charged as a result. Additionally, Fuzi testified that there was "ill will" between her and defendant. Therefore, defendant cannot establish that the outcome of trial would have been different if Fuzi's testimony would have been admitted (i.e., plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764) and defendant is not entitled to relief on his claim that the trial court infringed his constitutional right to present a defense on this basis.

Pangle was questioned on direct examination whether he received a telephone call from defendant in June 2013, and Pangle responded that he did. When Pangle was asked about the nature of the telephone call, the prosecutor objected on hearsay grounds. The trial court stated that the prosecutor's objection would be sustained unless defendant could establish a hearsay exception. Defendant could not establish an applicable exception and this Court can think of none. Defendant's statements to Pangle constitute hearsay because they were made out of court and were being offered for the truth of the matter asserted. See MRE 801(c). That is, defendant was offering his statements to Pangle to establish that Fuzi planned to make false allegations against him. As such, they were properly excluded as hearsay.

Defendant also argues that the trial court's failure to admit Fuzi's and Pangle's testimony violated the rule of completeness. However, defendant's reliance on the rule of completeness to justify relief is misplaced. Under the rule of completeness in MRE 106, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." This "rule of evidence [is] only . . . pertinent if defendant sought, but was denied, permission to have a complete writing or recorded statement introduced." *People v McGuffey*, 251 Mich App 155, 161; 649 NW2d 801 (2002). Because the rule of completeness only pertains to the admissibility of writings or recorded statements, and defendant's argument concerns the actual testimony of Fuzi and Pangle, it is irrelevant here.

## PROSECUTORIAL MISCONDUCT

Defendant next asserts that the prosecution engaged in misconduct and violated the due process principle enunciated in *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by falsifying evidence, to wit: a certified record of defendant's sex offender registration. We disagree.

"[A] defendant must contemporaneously object and request a curative instruction" to preserve an issue of misconduct for appellate review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant failed to object when the prosecutor offered the certified record of his sex offender registration into evidence. Therefore, this issue is not preserved.

Generally, to prevail on a claim of prosecutorial misconduct, a defendant must show that he was denied a fair and impartial trial. *People v Bosca*, 310 Mich App 1, 26; 871 NW2d 307 (2015). In reviewing prosecutorial misconduct challenges, this Court views the alleged prosecutorial misconduct in context. *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003). A defendant is entitled to a fair trial, not a perfect one. *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008).

This Court reviews a defendant's constitutional due process claim de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). However, when, as here, an issue is unpreserved, this Court's review is limited to plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764. To obtain relief generally requires a showing of prejudice, specifically that the error affected the outcome of the lower court proceedings. *Id.*

Here, defendant argues that the prosecutor offered a fraudulent record into evidence in violation of *Brady*. Defendant's reliance on *Brady*, however, is misplaced. The three components of a *Brady* violation are that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). In this case, defendant does not argue that the prosecutor suppressed evidence, but rather that it *falsified* evidence. Defendant does not suggest—and nothing in the record supports—that the record of defendant's sex offender registration was not available to defendant before trial. Thus, the rule from *Brady* is inapplicable here.

Considering defendant's argument under the general prosecutorial misconduct rules, we find it has no merit. First, defendant's assertion that the certified record was falsified is unsupported. Nothing in the record suggests that the prosecutor or anyone else falsified the document or tampered with it in any way. Defendant's argument is merely an unsubstantiated allegation, which this Court finds insufficient to grant appellate relief. The fact that defendant's telephone number was contained on a separate document does not show that the certified record of his sex offender registration was fraudulent.

Second, defendant failed to demonstrate that the prosecutor admitted the certified record of his sex offender registration in bad faith. The prosecutor offered the evidence through the testimony of Director Grinnewald, who was the individual who last verified defendant's registration. Grinnewald explained that the certified record admitted in evidence was requested through the Michigan Sex Offender Registry. His testimony established that defendant was provided with a copy of the certified record the last time he came into the department to verify his information. Defendant was told to look over the record and state if anything needed to be altered or added. Defendant did not change or add any information, and then Grinnewald watched defendant initial the document. Based on this testimony, it appears that the prosecutor offered evidence of defendant's certified record of his sex registration in good faith, and defendant has shown nothing to the contrary. "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d

123 (1999). Therefore, defendant's claim of prosecutorial misconduct is wholly without merit, and he has not established plain error. *Carines*, 463 Mich at 763-764.[11]

We thus vacate defendant's convictions for failing to comply with SORA and affirm in all other respects. We remand to the trial court to correct the presentence investigation and the judgment of sentence. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

---

[11] Defendant also includes in his questions presented an alternative argument that his right to the effective assistance of counsel was violated by defense counsel's failure to object to the falsified evidence. However, defendant fails to explain this argument in his analysis, and he cites no law pertaining to ineffective assistance of counsel under this issue. Thus, this Court finds his argument abandoned. *Kevorkian*, 248 Mich App at 389.