# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL DOUGLAS POOLE, SR.,

Defendant-Appellant.

UNPUBLISHED
May 16, 2017

No. 330735
Genesee Circuit Court
LC No. 13-034108-FC

Before: TALBOT, C.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Defendant was convicted by his plea of no contest to two counts of first-degree felony murder, MCL 750.316(1)(b). He was sentenced to the mandatory sentence of life imprisonment without parole. Claiming that trial counsel provided ineffective assistance during the plea process, defendant brought a motion through appellate counsel to withdraw his plea. The motion was denied by the trial court and defendant appeals that denial by leave granted.[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The evidence from the preliminary examination (which was used as the factual basis for defendant's no contest plea) established that defendant choked his girlfriend and her 11-year-old daughter to death and that defendant sexually assaulted the daughter. Defendant admitted to his mother and later to police that he strangled both victims.

Based on information that he received from defendant and defendant's mother, defendant's trial counsel requested an evaluation for competency and criminal responsibility by the Center for Forensic Psychiatry (CFP) before the preliminary examination was conducted. The CFP report concluded that defendant was competent and criminally responsible, and that his previous claims of mental illness were likely the result of his abuse of controlled substances, both illegal and prescribed. In particular, the report noted that while defendant had been

---

[1] *People v Poole*, unpublished order of the Court of Appeals, entered January 29, 2016 (Docket No. 330735).

-1-

incarcerated (and therefore unable to obtain controlled substances) there were no reports of mental illness.

On October 20, 2014, defendant appeared with his counsel, was sworn to tell the truth, and agreed to plead no contest to two counts of felony murder in return for the prosecution's dismissal of two counts of first-degree premeditated murder and one count of first-degree criminal sexual conduct. The prosecutor stated that there was no sentence agreement, noted that defendant was a fourth-offense habitual offender, affirmed that there was no consecutive sentencing, and informed the court that the Holmes Youthful Trainee Act was not applicable to defendant and that restitution would be determined by the court; there were "no other additional considerations."

After the prosecution and defense counsel informed the court that the basis for the no contest plea was the "[p]otential for civil liability" and "some memory problems," the trial court advised defendant concerning the significance of a no contest plea and explained that defendant was asking to be permitted to plead no contest because "if you were to tell me in your own words what it is that you did, you might be opening yourself up to multiple lawsuits and certain financial consequences;" defendant agreed that he understood.

The court then questioned defendant regarding the advice of rights form that it had been provided; defendant agreed that he had signed the form, that he had gone over the form with his attorney, and that he had no questions about any of the listed rights. The court again admonished defendant that he was, in all likelihood, going to spend the rest of his life in prison. Nevertheless, defendant indicated that he wanted to plead no contest.

The parties stipulated to the use of the preliminary examination transcript to supply the factual basis in support of defendant's plea, and they also submitted copies of the autopsy reports of the two victims. The court read the charges to defendant and asked him how he wanted to plead; defendant responded "No contest" to both of the charges. Defendant was again asked if he understood that by pleading no contest, it would be the same as if he had been found guilty by a jury and he answered, "Yes." Defendant agreed that it was his choice to plead no contest, that no one had threatened him to get him to plead, that there were no promises made to get him to plead, and that he was pleading no contest freely and voluntarily. Defendant indicated that he was taking "Remeron," a drug that helped him to "slow down [his] racing thoughts"; he denied that it affected his ability to make decisions or his ability to have discussions with counsel, and denied taking other medications.

The trial court spent about ten minutes reviewing the preliminary examination transcripts and the autopsy reports and concluded that defendant was guilty of the two charged counts of first-degree felony murder and that the underlying felony to support these charges was first-degree criminal sexual conduct. Following its review, the trial court concluded that defendant's pleas were made voluntarily and understandingly, and that there was no undue influence, compulsion, or duress. The trial court concluded that defendant understood the rights he was giving up and the mandatory sentencing consequences of his plea; accordingly, it accepted defendant's plea.

Subsequently, on November 17, 2014, defendant was sentenced by the trial court to the mandatory term of life imprisonment without parole. Other than noting that defendant claimed to have a bad back that sometimes required him to use a cane to walk, neither defendant nor his counsel had any changes to make to the presentence report. Defendant's counsel addressed the court and explained that two things were important to consider: first, that defendant opted out of his right to have a trial because "he didn't want to put anybody through anymore [sic] pain than what was already incurred;" and second, that defendant "has been consistently remorseful throughout this process." Defendant then addressed the court. He apologized to the victims' family and friends as well as to his own family and friends for what he had put them through. Defendant concluded: "If I would have known that mood swings, anger and aggression, impulsive thoughts and homicidal suicidal thoughts were the side effects of the medication I was taking at the time, this would not have happened."

Defendant subsequently requested the appointment of appellate counsel, and his appointed counsel moved to withdraw the plea. At an evidentiary hearing appointed trial counsel testified that he requested that defendant be evaluated for competency and criminal responsibility. On the request form, counsel had written "history of mental illness per his mother, was diagnosed earlier in prison," and on question one counsel had written "schizophrenia" and "bipolar disorder." He wrote these on the form because he had information that defendant might have those conditions. Counsel appeared unaware that the criminal responsibility evaluation was actually conducted;[2] he did, however, become aware of a report from the Forensic Center for the Department of Community Health. He was shown defendant's Exhibit C and he identified it as the October 22, 2013 report he received from the CFP. He recalled reading in the report that there was a statement that defendant had been prescribed mental health medication and had been diagnosed as suffering from chronic paranoid schizophrenia within six months preceding the murders.

Counsel acknowledged that defendant was entitled to an independent criminal responsibility evaluation at public expense, and he stated that he discussed that option with defendant. Counsel stated that defendant declined the independent evaluation. Regarding the CFP report, counsel testified that, while he did not specifically recall discussing it with defendant, he generally would make a copy of such a report for his clients, and he was "sure" that he spoke with defendant about it. He stated that it was his routine to go over a competency evaluation/criminal responsibility evaluation with his clients and he believed he had done so with

---

[2] The report listed the subject of the report as "Criminal Responsibility." The report indicated initially that the referral was "for evaluation of [defendant's] competency to stand trial and [for] criminal responsibility." The concluding paragraph of the report states:

> In conclusion, it is my opinion that Mr. Poole was neither mentally ill nor mentally retarded at the time of the alleged offenses. Moreover, it is my opinion that he did not lack substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to [the] requirements of the law. Therefore, in my opinion the available information does not support a defense of legal insanity.

defendant. Although he could not recall the specifics, he believed they went over the report together and, "[t]o the best of my knowledge, I believe we discussed having an independent [evaluation] done or at least I offered."

Counsel agreed that the CFP report concluded that defendant was not mentally ill or mentally retarded; he believed he spoke with defendant concerning this conclusion. When asked if defendant wanted an independent evaluation, he responded:

> The facts of this case were such that I found Mr. Poole to be in a great state of – and I don't mean this in a guilty/not guilty [sense]. He was very distraught about the situation. My recollection was that Mr. Poole wanted to move the case forward after the forensic evaluation was done.

> So, we did not – as I say, I give my clients the opportunity to say I want to have an independent evaluation done. So, to my recollection, that never came up after the original report was provided to the prosecutor's office, as well as myself.

Counsel reiterated that defendant told him he wanted the case to move forward, and that, about two weeks before the scheduled trial, while they were involved in preparing, defendant questioned whether they even needed to have a trial. Counsel testified that he did not send a letter to defendant confirming their decision to forego an independent evaluation and so there was nothing in writing in his file about their discussions on this point.

Defendant testified and admitted that counsel met with him between the time he was arrested and the time he offered his no contest plea. Defendant admitted that counsel discussed the CFP report with him, but denied that counsel spoke with him about getting an independent psychiatric evaluation. Defendant stated that around the time of the murders he had been seeing a psychiatrist at Consumer Services in Flint and the doctor had been prescribing Depakote, Xanax, Seroquel, and Trazodone. Defendant also asserted that, had he known he could get an independent evaluation, he would not have pleaded no contest. On cross-examination, defendant acknowledged that he had previously been convicted of five felonies and five misdemeanors, and had pleaded guilty in all those cases.

The trial court denied defendant's motion to withdraw his no contest pleas. The trial court concluded:

> The Court acknowledges that this issue would be easier to resolve had trial counsel obtained a written waiver of the defendant's right to request an independent evaluation. However, the fact that such a written waiver was not obtained does not mean that the defendant was not advised of his rights. In addition, the lack of a written waiver does not alter the Forensic Center's conclusion that the defendant was competent and responsible for his actions. Based upon the review of the materials as set forth above, the defendant has not persuaded this Court that he is entitled to withdraw his no contest pleas.

The trial court entered a written order denying defendant's motion on November 18, 2014. This appeal ensued.

-4-

## II. ANALYSIS

On appeal, defendant contends that the trial court erred in denying his motion to set aside the pleas because trial counsel rendered ineffective assistance of counsel by failing to investigate defendant's mental health history and by failing to request an independent evaluation of defendant's criminal responsibility.

We review a trial court's decision on a motion to withdraw a plea for an abuse of discretion. *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). A trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes. *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014). Whether counsel was ineffective involves a mixed question of fact and constitutional law. *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id*. at 188.

On appeal, defendant argues that trial counsel was ineffective during the plea proceeding. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and that a reasonable probability exists that, without counsel's unprofessional errors, the outcome of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. With respect to the plea-bargaining process, our Supreme Court has held that:

> [A] defendant is entitled to the effective assistance of counsel in the plea-bargaining process. *Lafler v Cooper*, 566 US ___, ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012). A defendant seeking relief in this context must meet *Strickland*'s familiar two-pronged standard by showing (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at ___; 132 S Ct at 1384. In demonstrating prejudice, the "defendant must show the outcome of the plea process would have been different with competent advice." *Id*. at ___; 132 S Ct at 1384. [*People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014).]

Defendant contends that trial counsel was ineffective for two reasons. First, defendant argues, trial counsel was ineffective for his failure to investigate defendant's mental health history. Next, defendant argues, trial counsel was ineffective for failing to request an independent evaluation of defendant's criminal responsibility.

As to the first issue raised by defendant, the record belies his claim that trial counsel failed to investigate his mental health history. Our review of the record reveals that trial counsel requested defendant be evaluated by the CFP for competency and criminal responsibility. When asked at the hearing on the motion to withdraw the plea about information he had provided on the application for the competency evaluation, trial counsel agreed that under the comments, he

had written "history of mental illness per his mother, was diagnosed earlier in prison" and had also written "schizophrenia" and "bipolar disorder" on question one. He wrote these on the form because he had information that defendant might have those conditions. The record further reveals that trial counsel was also aware of defendant's history of taking various prescribed medications and his reporting of various mental issues because the CFP report discussed them. Defendant admitted that counsel discussed both his mental health and the CFP report prior to defendant entering a plea of guilty. From these undisputed facts we conclude that trial counsel could not have been aware of defendant's mental health history absent a reasonable inquiry. Further, the record clearly reveals that defendant and trial counsel had discussions about defendant's history of mental illness. Consequently, in the absence of any proof that trial counsel's investigation into defendant's mental health was anything other than reasonable and effective in that it elicited information necessary to request a CFP report, this Court concludes that trial counsel properly investigated defendant's history of mental illness. Accordingly, defendant is not entitled to relief on this issue.

As to defendant's second claim, that trial counsel was ineffective for failing to request an independent criminal responsibility evaluation, we begin our inquiry by noting our agreement with the trial court when it aptly stated: " . . . this issue would be easier to resolve had trial counsel obtained a written waiver of the defendant's right to request an independent evaluation."

Defendant asserts that trial counsel never informed him of his right to an independent evaluation. However, trial counsel testified that he did inform defendant of his right to an independent evaluation but defendant declined, apparently because he wanted to "move the case forward." This claim is consistent with other record evidence. Defendant admitted to both his mother and to the police that he killed both victims by choking them to death, and his admissions were validated by the autopsy. Defendant wrote a letter to the district court judge complaining that he had wanted counsel to waive the preliminary examination and asserting that he wanted "to get this over with." According to testimony of trial counsel, two weeks before the scheduled trial, defendant asked that he be allowed to plead guilty.

To the extent defendant and trial counsel's testimony conflicts, such a credibility determination falls within the province of the trial court. See *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008) (regard must be given to special opportunity of trial court to determine credibility of witnesses appearing before it). From our review of the record and the reasons set forth by the trial court for its ruling, we conclude that the trial court did not clearly err in finding counsel more credible than defendant.

Additionally we note that while there was evidence in the record of defendant's prior mental health issues, as noted in the CFP, the past mental issues appeared to be intertwined with defendant's history of substance abuse. When defendant was incarcerated (and therefore deprived of ready access to controlled substances), there were no reports of mental illness or other related issues. The CFP report noted that defendant's drug screens were positive for marijuana and cocaine. The CFP report also detailed defendant's interactions with mental health professionals and noted that he had a "significant history of abusing substances." The report noted that defendant had a history of "medication seeking," behavior and that "he was typically described as not presenting with overt signs of mental illness during his contact with mental health staff." Testimony also revealed that both defendant and trial counsel agreed that they

-6-

jointly reviewed the CFP report. Hence, defendant's characterization that his trial counsel failed to act on his mental illness is not factually correct. Our review of the record reveals that this Court is not faced with a record wherein defendant presented with a history of mental illness and trial counsel did nothing. Rather, this Court is presented with a record that reveals trial counsel investigated defendant's claims of prior mental illness and submitted a request for CFP criminal evaluation. Trial counsel obtained a CFP examination regarding defendant's competence and criminal responsibility. The CFP report, as indicated, concluded that defendant was criminally responsible and was not legally insane. Trial counsel reviewed the report and then discussed the report with defendant and explained that they could request an independent evaluation. According to trial counsel, defendant declined because he wanted to move the process forward and instead he asked counsel to explore a plea arrangement that would obviate having a trial. Trial counsel did not indicate that there was any difficulty communicating with defendant and did not indicate that defendant either exhibited signs of mental illness or made claims of mental illness during their interaction. And, as noted by the trial court, defendant had already been evaluated and deemed both competent and not mentally ill. During the *Ginther* hearing, defendant did not present any evidence from which the trial court could find that had defendant been evaluated by an independent forensic psychiatrist, he would have been found mentally ill. Similarly, on appeal, defendant presents no evidence by way of affidavit or testimony on which this Court could reach such a conclusion.

Moreover, to the extent that defendant's mental issues derived from his substance abuse, trial counsel was presumptively aware that pursuant to MCL 768.21a(2), "[a]n individual who was under the influence of voluntarily consumed . . . controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the . . . controlled substances." Similarly, pursuant to MCL 768.37(1), "it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed . . . drug, including a controlled substance." While MCL 768.37(2) does permit a defendant to claim an affirmative defense based on voluntary consumption of "a legally obtained and properly used medication or other substance" where the defendant "did not know and reasonably should not have known that he or she would become intoxicated or impaired," there was no evidence that defendant had been taking legal medications at the time of the murders.

The trial court found that trial counsel requested a CFP evaluation and discussed the evaluation and potential for an independent evaluation with defendant. The trial court further found that defendant declined the independent evaluation and expressed a desire to move the case forward by entering a plea of no contest. The record supports the factual findings made by the trial court. Additionally, our review leads us to conclude that defendant has not shown that counsel's representation fell below an objective standard of reasonableness. *Douglas*, 496 Mich at 591. Accordingly, the trial court did not abuse its discretion when it denied defendant's motion to set aside his plea. *Effinger*, 212 Mich App at 69.

Affirmed.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello