*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 26, 2021

v

MAURELL ANTOINE KURTZ, also known as,
MAURELL ANTIONE KURTZ,

        Defendant-Appellant.

No. 352534
Wayne Circuit Court
LC No. 19-001184-01-FC

Before: BECKERING, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for four counts of criminal sexual conduct in the first degree (CSC-I), MCL 750.520b(1)(b)(*iii*), attempted child sexually abusive activity or material, MCL 750.145c(2), accosting, enticing, or soliciting a child for immoral purposes, MCL 750.145a, dissemination of sexually explicit matter to a minor, MCL 722.675, and using a computer to commit, solicit, or attempt a crime, MCL 752.796. Defendant was sentenced, as a third-offense habitual offender, MCL 769.11, to concurrent terms of 35 to 50 years' imprisonment for each count of CSC-I, 15 to 30 years' imprisonment for attempted child sexually abusive activity or material, one to six years' imprisonment for accosting, enticing, or soliciting a child for immoral purposes, one to three years' imprisonment for dissemination of sexually explicit matter to a minor, and 2 to 10½ years' imprisonment for using a computer to commit, solicit, or attempt a crime. On appeal, defendant argues that there was insufficient evidence to convict him of CSC-I because the prosecution failed to establish the element of coercion. We affirm.

## I. FACTS AND PROCEEDINGS

This case arises out of the sexual assault of CB by defendant on February 1, 2018, and the sending of sexually explicit electronic messages between CB and defendant in the days that followed. CB was 14 years old when the assault occurred.

Defendant sporadically dated the victim's mother from about 2010 or 2011 until the sexual assault occurred in February 2018. He would visit the home once every few months and spend time with the mother, CB, and CB's brother, sometimes spending the night. Defendant would also

babysit the children from time to time, because their mother would not leave them home alone due to the CB's bipolar disorder and her brother's autism. CB testified that defendant "was like a father figure to me." They spent time together and sometimes he would take her to the store, without her brother, and buy her chips or candy. Defendant began babysitting CB while her mother was out when CB was about 13 or 14 years old. CB said at the time that they were very close.

The day of the assaults, defendant was babysitting CB and her brother while her mother was out. CB was in the living room, her brother was in his bedroom, and defendant was in her mother's bedroom. Defendant called CB into her mother's bedroom, ostensibly to talk and watch a movie together. Defendant was lying on the bed while CB sat on the edge of the bed for about 10 minutes until defendant asked for a hug. CB testified that she laid down next to defendant to hug him and that defendant touched her for a while, including feeling her "butt" under her clothes. Then he barred the door with a wooden plank that her mother kept to lock the door. CB asked defendant what he was doing, but he did not answer. She testified that she wanted to leave and told defendant to stop touching her and that he was too old for her, but defendant merely replied that it was not wrong if it felt good. Defendant then had oral and vaginal sex with CB. Afterwards, they continued watching the movie and did not talk.

About 10 to 20 minutes later, defendant had vaginal intercourse with CB again. About an hour after that, he had vaginal intercourse with her for a third time. Each time, defendant would bar the door and place CB in the position he wanted her. And each time, afterwards they went back to watching the movie and not talking. CB did not leave the room or try to leave in between sex acts, but defendant unbarred the door after each time.

CB testified that all of this happened between about 2:00 p.m. and 5:00 p.m. when her mother returned home. CB left her mother's room and returned to the living room, while defendant went to sleep. CB watched television in the living room and did not say anything because she did not want her mother to find out what had happened.

CB began texting defendant the next day. She testified that she did not "like" defendant in a romantic sense until he "forced" her to have sex with him. Defendant called CB his "little almost girlfriend" and said that they were together. Defendant asked CB if she missed him and told her he wanted to have sex with her again. Defendant sent CB photos of himself shirtless and three photos of his penis. Defendant also talked CB into sending him nude photographs of herself by offering her oral sex in exchange for them. He asked CB to delete their text messages.

These communications went on over several days until her mother found the messages on CB's phone. CB testified she was sad when she could not contact defendant anymore. She felt like defendant was the only person who cared for her and she loved him for a time. CB also testified that she attempted suicide and was hospitalized four times over this incident.

The sole issue on appeal is whether there was sufficient evidence to convict defendant of CSC-I.

## II. STANDARD OF REVIEW

"This Court reviews de novo challenges to the sufficiency of the evidence." *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). We "must determine whether the

evidence was sufficient to justify a rational trier of fact's conclusion that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Id.* The evidence is "viewed in the light most favorable to the prosecution." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

## III. ANALYSIS

The CSC-I statute has multiple aggravating circumstances under which the charge can be proved. Here, the prosecution brought charges under MCL 750.520b(1)(b)(*iii*), the aggravating circumstance concerning abuse of a position of authority over the victim. MCL 750.520b states, in pertinent part, as follows:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

> \* \* \*

> (b) That other person is at least 13 but less than 16 years of age and any of the following:

> \* \* \*

> (*iii*) The actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

Sustaining a conviction under MCL 750.520b(1)(*iii*) requires proving four elements:

> (1) the defendant sexually penetrated another person (the complainant), at a time when (2) the complainant was at least thirteen, but less than sixteen, years old, (3) the defendant was in a position of authority over the complainant, and (4) the defendant used this authority to coerce the complainant to submit to the sexual penetration. [*People v Reid*, 233 Mich App 457, 467; 592 NW2d 767 (1999).]

Defendant's only argument on appeal is that there was insufficient evidence for conviction on the element of coercion under CSC-I. It is worth noting that, while defendant does not challenge CB's credibility as a witness, "it has long been settled that a complainant's testimony regarding a defendant's commission of sexual acts is sufficient evidence to support a conviction for CSC–I[.]" *People v Bailey*, 310 Mich App 703, 714; 873 NW2d 855 (2015). See also MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g.").

The statute does not define "coercion" under MCL 750.520b(1)(b)(*iii*). However, we have stated that "force or coercion is not limited to physical violence but is instead determined in light of all the circumstances." *Reid*, 233 Mich App at 468 (cleaned up). Coercion need not be physical; it may be implied or constructive in nature. *Id*. at 469. A victim need not resist. MCL 750.520i.

This Court has found an authoritative relationship and coercion in the absence of any formal relationship between the defendant and the victim. In *Reid*, the defendant was acting as a

mentor and informal counselor to help the teenage victim with problems at school at the request of the victim's parents. *Reid*, 233 Mich App at 460-461. The defendant and the victim first met at a local shopping mall and fast food restaurant while the victim was suspended from school. *Id*. The two met approximately four times over a two-month period before the defendant arranged for a sleepover with the victim. *Id*. at 461-462. At the sleepover, the defendant plied the victim with alcohol and sexually assaulted him. *Id*. at 464-465. *Reid* found that this was sufficient evidence that the defendant was in a position of authority and used it to coerce the victim into sexual penetration. *Id*. at 471.

Similarly, defendant here was in a position of position of authority over CB because, as she testified, he was a babysitter and father figure to her.[1] Defendant used his authority in this regard to lure CB into the bedroom under the pretense of watching a movie, where he was able to sexually assault her despite her repeated protests to the contrary. Indeed, CB testified that defendant "forced" her to have sex with him and even barricaded the door during the sexual assaults. This evidence—the testimony of CB that she was unwilling to engage in sex with defendant and that the door was barricaded, as well as the obvious implication that CB was expected to follow the directions of defendant while he was the babysitter—was sufficient to show that she was coerced into engaging in sexual penetration with him.

## IV. CONCLUSION

In sum, there is sufficient evidence for a rational jury to find beyond a reasonable doubt that defendant coerced CB into sexual penetration and find defendant guilty under MCL 750.520b(1)(b)(*iii*). We affirm.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan

---

[1] Although defendant on appeal only challenges the element of coercion, he states that he had a "consensual relationship" with CB. We disagree and believe that he was in a "position of authority" over CB, who suffered from a bipolar disorder, and used it to coerce her. See *Reid*, 233 Mich App at 471.