# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JALON LADRICK MERRIWEATHER,

Defendant-Appellant.

UNPUBLISHED
June 27, 2017

No. 331666
Muskegon Circuit Court
LC No. 14-065266-FC

Before: MARKEY, P.J., and MURPHY and METER, JJ.

PER CURIAM.

Defendant, Jalon Ladrick Merriweather, appeals as of right his jury-trial convictions of first-degree premeditated murder, MCL 750.316(1)(a); carrying a concealed weapon, MCL 750.227; possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and commission of a felony by a member of a gang, MCL 750.411u. The trial court sentenced him to life imprisonment without parole for the murder conviction; 1 ½ to 5 years' imprisonment for the conviction of carrying a concealed weapon; 2 years' imprisonment for the felony-firearm conviction; and 7 years and 11 months to 20 years' imprisonment for the gang-related conviction. We affirm.

This case arose out of the shooting death of the victim on June 24, 2014, in Muskegon Heights. The victim was killed while he was walking to work near the intersection of Hume Street and Reynolds Avenue. He was a known member of a gang called the Gangster Disciples.

Defendant argues that he was denied effective assistance of counsel because defense counsel failed to move to suppress evidence relating to defendant's gang membership. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Because defendant failed to move for a new trial or an evidentiary hearing based on ineffective assistance of counsel, this Court's review of his claim is limited to errors apparent on the record. *People v Sabin (On Second Remand),* 242 Mich App 656, 659; 620 NW2d 19 (2000).

-1-

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Id*. "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*.

We will first set forth the pertinent history in this case relating to the gang-related charge. At the August 3, 2015, motion hearing, defense counsel initially argued against the addition of the gang-related charge, contending that the delay for a preliminary examination would violate defendant's right to a speedy trial. The trial court offered defendant a choice: he could ask for a remand to the district court for a preliminary examination or waive his objection to the addition of the charge and proceed to trial. Based on these options, defendant waived any objection to the addition of the charge in order to proceed to trial. To the extent his counsel may have advised him to do so, this decision was a matter of trial strategy. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). At the motion hearing, defendant had been incarcerated for over a year. To proceed to trial instead of requiring defendant to remain in jail while his case was remanded to the district court and while he waited for a new trial date was not unreasonable under the circumstances. Based on the foregoing, defendant has failed to establish that his counsel was deficient for waiving the objection to the addition of the gang-related charge. *Sabin* (*On Second Remand*), 242 Mich App at 659.

In addition, defendant cannot show that absent defense counsel's waiver, that the outcome of his trial would have been different. *Id*. On appeal, defendant does not argue that he was not a member of the Baker Street Goons (BSG). Instead, he contends that BSG did not meet the definition of "gang" in MCL 750.411u(1)(a) because there was no established leadership or command structure. However, there was sufficient evidence produced at trial to establish that BSG was a gang as defined in MCL 750.411u(1)(a).

MCL 750.411u(1)(a) defines "gang" as:

an ongoing organization, association, or group of 5 or more people, other than a nonprofit organization, that identifies itself by all of the following:

(*i*) A unifying mark, manner, protocol, or method of expressing membership, including a common name, sign or symbol, means of recognition, geographical or territorial sites, or boundary or location.

(*ii*) An established leadership or command structure.

(*iii*) Defined membership criteria.

Although one of the members of BSG testified at trial that the members of BSG did not consider it a gang, he testified that the members would help each other in physical altercations

and that the members would commit crimes together. In addition, the members of BSG had a specific hand signal to show affiliation and the area surrounding Baker Street was their territory.

Further, one detective testified that BSG had eight confirmed members and consisted of young adults who grew up in the neighborhood surrounding Baker Street. He testified that the criteria for joining BSG required members to commit violent acts on behalf of BSG. In addition, if a member were to "snitch" on a "brother," that member would be removed from BSG.

On appeal, defendant specifically contends that BSG was not a gang because there was no established leadership or command structure. However, the detective described BSG's structure as follows: "instead of a hierarchy or a totem pole if you will, it's more of a lateral structure. I almost assimilate [sic] it to like shared stockholders and they all have equal shares. They all make the decisions on what that corporation or group or gang is going to do." He stated that "[t]here is a structure but no actual CEO if you will." He indicated that "they group together to make the decisions for the group." This detective and another detective testified that BSG qualified as a gang in Muskegon County.

Based on the testimony, there was sufficient evidence to show that BSG was a group of five or more people that identified itself by: (1) a unified method of expressing membership because the members used a specific hand signal to show affiliation and BSG territory included the area surrounding Baker Street; (2) an established command structure because all of the members made decisions regarding BSG's activities, in a fashion analogous to stockholders; and (3) defined membership criteria because members grew up in the neighborhood surrounding Baker Street, the members agreed to commit violent acts on behalf of BSG, and the members agreed to protect other members of BSG. As such, there was sufficient evidence produced at trial to establish that BSG qualified as a gang as defined in MCL 750.411u(1)(a).

Accordingly, any motion for a directed verdict or to exclude the evidence of gang membership would have been futile. In addition, there is no reason to assume that sufficient evidence would not have been presented at a preliminary examination. Moreover, even if less evidence had been presented at a preliminary examination and defendant was bound over, we note that "a magistrate's erroneous conclusion that sufficient evidence was presented at the preliminary examination is rendered harmless by the presentation at trial of sufficient evidence to convict." *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002). Defendant has failed to show that the outcome of the trial would have been different absent defense counsel's purported advice to waive the preliminary hearing for the gang-related charge and absent defendant's counsel objection to the gang evidence. *Sabin* (*On Second Remand*), 242 Mich App at 659.

Next, defendant contends that he was denied his right to present a defense because the trial court excluded testimony from defendant's sister and denied defendant's motion to allow the jury to view the crime scene. We disagree.

"This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). A trial court's decision to exclude evidence is reviewed for an abuse of discretion. *People v Brownridge*, 459 Mich 456, 460; 591 NW2d 26 (1999), amended 459 Mich 1276

(1999). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted).

A criminal defendant has a constitutional right to present a defense, but that right "is not absolute." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016). "The defendant must still comply with established rules of procedure and evidence to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (quotation marks and citations omitted). Therefore, this right "extends only to relevant and admissible evidence." *People v Likine*, 288 Mich App 648, 658; 794 NW2d 85 (2010), rev'd on other grounds 492 Mich 367 (2012).

Defendant specifically argues that the trial court abused its discretion in excluding, as hearsay, the testimony of defendant's sister that one of the prosecution's eyewitnesses told her that he had been robbed by the victim. Defendant claims that the statement was an excited utterance.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is "generally inadmissible unless it falls under one of the hearsay exceptions set forth in the Michigan Rules of Evidence." *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). One such exception is known as an excited utterance; MRE 803(2) states that an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "The rule allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted). The requirements for an excited utterance are: "1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *Id*. "[I]t is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule." *Id*. at 551.

Here, the trial court found that a robbery was a startling event. However, it concluded that the eyewitness was no longer under the excitement of the robbery when he told defendant's sister that he had been robbed by the victim. The trial court recognized that there was no bright-line test with regard to the amount of time that can elapse between the event and the utterance. However, based on the description given by defendant's sister, the trial court found that the eyewitness did not appear to be under the influence of the robbery such that he would not have the reflective capacity essential for fabrication.

Based on defendant's sister's testimony, the trial court did not abuse its discretion in finding that the eyewitness's statement regarding the robbery did not qualify as an excited utterance. The sister testified that the eyewitness was angry, talking loudly, and pacing, but he was not breathing hard, sweating, or crying. In addition, the sister did not state exactly when the robbery occurred. She testified that the robbery occurred the previous evening, but she did not provide an exact time, and the eyewitness made the statements at approximately 9:00 a.m. As

the trial court found, the eyewitness "had a full night to ponder" the robbery. In addition, although the sister testified that the eyewitness was angry, her testimony did not establish that the eyewitness had "the lack of capacity to fabricate," see *Smith*, 456 Mich at 551, because he was not breathing heavily, crying, or sweating. Further, "[c]lose questions arising from the trial court's exercise of discretion on an evidentiary issue should not be reversed simply because the reviewing court would have ruled differently." *Id*. at 550. Defendant has not shown that the trial court's exclusion of his sister's testimony fell outside the range of principled outcomes. *Douglas*, 496 Mich at 565.

Defendant also argues that the trial court's decision to deny defendant's request to allow the jury to visit the crime scene was an abuse of discretion.

According to MCR 2.513(J):

On motion of either party, on its own initiative, or at the request of the jury, the court may order a jury view of property or of a place where a material event occurred. The parties are entitled to be present at the jury view, provided, however, that in a criminal case, the court may preclude a defendant from attending a jury view in the interests of safety and security. During the view, no person, other than an officer designated by the court, may speak to the jury concerning the subject connected with the trial. Any such communication must be recorded in some fashion.

In addition, MCL 768.28 states that "[t]he court may order a view by any jury empaneled to try a criminal case, whenever such court shall deem such view necessary." "[T]he purpose of a jury view is to enable the jury to comprehend more clearly by the aid of visible objects the evidence already received . . . ." *People v Unger (On Remand)*, 278 Mich App 210, 256; 749 NW2d 272 (2008) (quotation marks and citations omitted). However, "[i]t is within the trial court's discretion to order a jury view of the crime scene." *Id*. at 255.

The trial court was initially inclined to allow the jury to view the crime scene. However, the court ultimately decided against allowing the jury to view the scene for safety reasons because two shootings had occurred in the area in the 24 hours before trial began. Therefore, defendant submitted a video and photographs of the scene into evidence.

Based on the trial court's concern for the jury's safety at the crime scene, its denial of defendant's motion to view the scene was not an abuse of discretion. Two shootings within 24 hours in the area was cause for legitimate safety concerns for jury members and court personnel. Further, defendant submitted a video and photographs of the scene. The court's decision did not fall outside the range of principled outcomes." *Douglas*, 496 Mich at 565.

Based on the foregoing, defendant was not denied his constitutional right to present a defense at trial.

Affirmed.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Patrick M. Meter