*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THEODORE SHAW,

        Defendant-Appellant.

UNPUBLISHED
September 3, 2019

No. 343439
Wayne Circuit Court
LC No. 17-004754-01-FC

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant, Theodore Shaw, appeals as of right his bench trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant to two years' probation for the AWIGBH conviction and two years' imprisonment for the felony-firearm conviction, to be served concurrently, with credit for four days served in jail. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from a shooting that occurred on March 16, 2017, in Detroit, Michigan. The victim, Dwayne Cummings, and his wife, Bionca Cummings, lived across the street from defendant's sister, Rosetta Shaw. On the evening of March 15, 2017, Bionca and Rosetta got into a physical altercation relating to Dwayne having an affair with Rosetta. Shortly after the fight, defendant picked up Rosetta and took her back to his house, where she stayed the night.

---

[1] The trial court found defendant not guilty of assault with intent to commit murder, MCL 750.83, carrying a dangerous weapon with unlawful intent, MCL 750.226, and two additional counts of felony-firearm.

-1-

The next morning, on March 16, 2017, defendant drove back to Rosetta's house with the stated intention of picking up her medication and checking on her house and car.

What happened next is the subject of disputed testimony. According to Dwayne and Bionca, defendant aggressively approached Dwayne with a pipe in his hand. Dwayne, who was outside loading one or more of his children in the car in order to take them to school, started to back away from defendant. Defendant kept saying "Come on," as if he wanted to fight. Dwayne kept walking backwards, circling around the front of his house and ending up in the neighboring home's front lawn or driveway area. When defendant was approximately 10 feet away from him, Dwayne reached down to his waist with both hands in order to pull up his pants as he prepared to run. Dwayne saw defendant reach for his gun and Dwayne took off running. Defendant fired approximately seven shots toward Dwayne, hitting him once in the upper right arm near the shoulder.

According to defendant, who testified at trial, he approached Dwayne in order to discuss whether it was safe for Rosetta to return to her home; he denied the allegation that he had a pipe in his hand. As defendant approached him, Dwayne "squared up" like he was preparing for a fight, so defendant put his hands up in a defensive position. Defendant testified that Dwayne then lifted up his shirt and revealed a gun at his waist. As Dwayne was reaching for his gun, defendant pulled his gun out and fired five or six shots into the ground, approximately 6 to 12 inches away from Dwayne's right foot. As Dwayne continued to fidget with his gun, defendant shot him near his right shoulder, confident that the injury would be nonfatal. The trial court permitted Rosetta to testify regarding remarks made to her by her neighbor, Lamont Dunbar.[2] According to Rosetta, Dunbar told her that Dwayne had pulled a gun on defendant and that defendant shot back in self-defense.

After a bench trial, the trial court found Dwayne's and Bionca's version of the events, in corroboration with the physical evidence, to be more credible than defendant's version. The court found that defendant, who initiated contact with Dwayne that morning, had a motive to confront Dwayne because he was angry about his sister's injuries, while Dwayne, who was on his own property preparing to take his children to school, had no reason to shoot defendant. Furthermore, there was no evidence to support the claim that Dwayne had a firearm, and there were discrepancies between the statements defendant made in a 911 call following the shooting and his testimony at trial. The trial court acknowledged Rosetta's testimony about what Dunbar told her, but noted that there was "no physical proof whatsoever of another gun. No bullets, not one shot fired by Mr. Cummings. No gun found. He didn't drop it when he was shot. . . . Not

---

[2] Although Detroit Police Officer Dajuan Hughes initially made contact with Dunbar, Dunbar eventually stopped all communications and did not provide a statement or testify at trial. Defense counsel requested that Rosetta's testimony regarding Dunbar's statement be admitted under the catchall hearsay exception, MRE 804(b)(7), which the trial court allowed.

normal someone would continue to stand there trying to get out a gun while being shot at near about five times as testified by the defendant."[3]

Defendant filed a motion for a new trial, in which he argued that a voluntarily recorded videotaped statement made by Dunbar after the bench trial constituted newly discovered evidence that supported defendant's testimony that he shot in self-defense. Defendant also argued that Bionca threatened Dunbar not to testify at trial, so a failure to reopen the proofs and hear Dunbar's testimony would result in a miscarriage of justice. The trial court denied defendant's motion and proceeded to sentencing.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred in denying his motion for a new trial in order to reopen the proofs and hear eyewitness testimony from Dunbar, and that this error violated his Sixth Amendment right to present a complete defense. We disagree.

We first address defendant's claim that the trial court erred in denying his motion for a new trial. We review a trial court's decision to deny a motion for a new trial for abuse of discretion. *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

In support of his motion for a new trial, defendant argued that Dunbar's videotaped statement constituted newly discovered evidence and that, because Dunbar was threatened, the preclusion of his testimony would result in a miscarriage of justice. To justify a new trial based on newly discovered evidence, a defendant must show that: "(1) the evidence, not merely its materiality, was newly discovered, (2) the newly discovered evidence was not cumulative, (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial, and (4) the evidence makes a different result probable on retrial." *Grissom*, 492 Mich at 313. Defendant may have been able to establish that the evidence could not have been produced at trial because Dunbar refused to make himself available as a witness at that time. However, defendant could not show that the evidence was newly discovered, was not cumulative, and would have made a different result probable on retrial. *Id*.

As the prosecution points out, the parties and the trial court were aware of Dunbar as a potential witness and of what his proposed testimony would consist of if he testified. Moreover, as noted above, the trial court allowed Rosetta to testify regarding what Dunbar had told her shortly after the shooting under the catchall hearsay exception, MRE 804(b)(7). Because defendant was aware of the substance of Dunbar's statement throughout the entire trial, it does

---

[3]  In acquitting him of the other criminal charges identified in footnote 1 above, the trial court noted defendant's testimony regarding his military training and experience in firing weapons, and which of the bullets likely struck Dwayne based on the blood evidence, in concluding that it could not find beyond a reasonable doubt an intent to kill.

not constitute newly discovered evidence. Additionally, defendant himself testified that Dwayne had a gun and that he shot Dwayne in self-defense. Accordingly, neither Dunbar as a witness nor his anticipated testimony was newly discovered. Additionally, Dunbar's testimony would have been cumulative to the testimony of both Rosetta and defendant.

Furthermore, it is not probable that Dunbar's statement would have caused a different result at trial. "[W]itness credibility is a question for the fact-finder, and this court does not interfere with the fact-finder's role." *People v Solloway*, 316 Mich App 174, 181-182; 891 NW2d 255 (2016). The trial court found the testimony of Dwayne and Bionca more credible than that of defendant and Rosetta, both of whom had testified that Dwayne had a gun during the incident. In support of its credibility assessment, the trial court observed that the forensic evidence—in particular the placement of the shell casings from defendant's gun—supported Dwayne's account that he was backing away as defendant approached him. The court also reasoned that neither Dwayne nor Bionca would likely be eager to initiate a confrontation with defendant in the presence of their children, and noted that Bionca had repeatedly insisted in her call to 911 that defendant had been the aggressor. In addition, the court pointed to a number of discrepancies between defendant's report to the 911 operator and his trial testimony. The court also found it more likely that defendant would have more reason to shoot Dwayne in retaliation for the injuries to Rosetta than Dwayne would have to shoot him, and viewed as incredible defendant's account that Dwayne simply stood there, trying to get his gun out of his pants, while defendant shot at or near him multiple times. The court also reasoned that even if Dwayne had a gun, of which there was absolutely no evidence, nothing indicated that he posed a threat of serious bodily harm to defendant such that defendant would be justified in defending himself with deadly force. Although defendant argued that the trial court would have given Dunbar's personal testimony more weight than Rosetta's retelling of his remarks, it seems highly improbable that Dunbar's testimony would have undermined the trial court's conclusions from the forensic evidence. In denying defendant's motion for a new trial, the trial court found that it had already considered the substance of Dunbar's testimony and it still found Dwayne's and Bionca's testimony consistent with the physical evidence and reasonable inferences drawn from trial testimony. Defendant having failed to meet his burden to prove he was entitled to a new trial based on newly discovered evidence, see *Grissom*, 492 Mich at 313, we cannot say that the trial court erred in denying his motion.

Defendant also failed to establish that he was entitled to a new trial based on alleged witness intimidation. Under MCR 6.431(B), "the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." In ruling on defendant's motion, the trial court found that Dunbar was not threatened and that the issue had already been considered at trial. Even after the trial court[4] reviewed the videotaped statement provided by Dunbar, the trial court could not find a legitimate basis for believing Dunbar was in fear of harm or death. The trial court appeared to agree with the prosecution that Bionca sent messages to Dunbar generally admonishing him not

---

[4] The record indicates that both the trial court and the prosecution reviewed the Dunbar video that was attached to defendant's motion for a new trial.

to talk about the incident, to which messages Bionca had testified at trial, but she did not threaten him should he testify. Thus Bionca's messages to Dunbar, the court decided, did not amount to witness intimidation. Having thus failed to establish the factual predicate of his claim of witness intimidation, defendant did not meet his burden to show that the preclusion of Dunbar's testimony would result in an injustice. In light of the foregoing, the trial court's denial of defendant's motion for a new trial was within the range of reasonable and principled outcomes and, therefore, was not an abuse of discretion. *Grissom*, 492 Mich at 312; *Unger*, 278 Mich App 217.

Defendant next argues that the trial court's denial of his motion for a new trial violated his Sixth Amendment right to present a complete defense. We disagree. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (quotation marks and citation omitted). Defendant did not preserve his constitutional claim of error by presenting it to the trial court. We review unpreserved claims of constitutional error for plain error affecting a defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under plain-error analysis, defendant bears the burden to show that an error occurred, that the error was clear or obvious, and that the error affected the outcome of the proceedings. *Id*. Reversal is "warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant" or when the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

The right to a meaningful opportunity to present a complete defense is guaranteed by the Sixth Amendment of the United States Constitution. See *Holmes v South Carolina*, 547 US 319, 324; 126 S Ct 1727; 164 L Ed 2d 503 (2006) (quotation marks and citation omitted). The right to offer the testimony of witnesses is part of the right to a meaningful and complete defense. See *People v Kowalski*, 492 Mich 106, 139; 821 NW2d 14 (2012) (quotation marks and citation omitted). The right to present a defense, however, is not absolute. *Solloway*, 316 Mich App at 198. "The defendant must still comply with established rules of procedure and evidence designed to ensure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (quotation marks and citation omitted).

Even if defendant could prove that the trial court plainly erred by not reopening the proofs to allow admission of Dunbar's testimony, for the reasons discussed above, defendant cannot show that the error affected the outcome of the proceedings. The record shows that the trial court was aware of defendant's efforts to obtain Dunbar's testimony, allowed Rosetta to give hearsay testimony as to what Dunbar told her, and considered the testimony of defendant and the hearsay testimony offered by Rosetta when reaching its verdict. The trial court found the testimony incredible, but concluded that, even if Dwayne had had a gun, the physical evidence and reasonable inferences drawn from the trial testimony supported nevertheless that defendant was the aggressor, and that he was not acting in self-defense when he shot at Dwayne. Defendant has not demonstrated that the trial court's denial of his motion for a new trial was a plain error that affected the outcome of the proceeding, resulted in the conviction of an innocent person, or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Carines*, 460 Mich at 763-764

(quotation marks and citation omitted). Accordingly, he is not entitled to relief on his unpreserved claim of constitutional error.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron