*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. D. CORNELIUS, Minor.

UNPUBLISHED
March 10, 2022

No. 356933
Wayne Circuit Court
Family Division
LC No. 2020-000345-NA

*In re* A. S. CORNELIUS, Minor.

No. 357797
Wayne Circuit Court
Family Division
LC No. 2020-000344-NA

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father appeals as of right the trial court's orders terminating his parental rights to his minor children, ASC and MDC, under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

These terminations stem from ASC's disclosures that respondent sexually and physically abused her. At the adjudication bench trial, ASC testified that respondent made her "suck his private part," that respondent's private part was in her mouth, and that at some point he told her he would "kill" her or her mother if ASC told anyone. Although the assistant attorney general asked ASC more than once to further describe what occurred between her and respondent, she repeatedly declined to elaborate, stating that it involved saying a "bad word" and "[t]oo much

---

[1] *In re M D Cornelius Minor*, unpublished order of the Court of Appeals, entered [September 21, 2021] (Docket Nos. 356933 and 357797).

-1-

details."[2]  ASC was 12 years old at the time of trial.  ASC testified that there were "[a] lot of times" that respondent forced her to suck his private parts from the time ASC was 6 or 7 years old until she was 10.  According to ASC, respondent held a gun to her head and threatened to kill her when she refused.  Additionally, ASC indicated that respondent punched her and caused black eyes when she refused and that respondent hit her with a belt and a shoe.  ASC also testified that MDC's mother[3] observed the sexual abuse and that "after I get done she'll get on top of him and she'll start having sex" with respondent while ASC was still present.

ASC testified that she had asked MDC's mother to help her call the police to report respondent's abuse, but MDC's mother would not help her.  ASC additionally testified that her grandmother, respondent's mother, had caught respondent sexually abusing ASC.  According to ASC, respondent's mother called the police but only told them that respondent had a gun and did not report respondent's sexually abusive conduct.

Respondent called MDC's mother as a witness to testify.  MDC's mother testified that she had been to respondent's residence, that she had never seen respondent sexually abuse ASC or MDC, and that she had never had sex with respondent in front of ASC.  MDC's mother further testified that she had known ASC since the child was two years old, that ASC was not a truthful child, that ASC "tells lies," and that she had caught ASC telling lies more than 10 times.

Respondent's mother also testified on respondent's behalf.  She testified that respondent had lived with her for his entire life.  She also testified that respondent would not abuse his daughters and that ASC was not a truthful child.  Respondent's mother stated that she was not aware of any sexual abuse of ASC by respondent and that ASC had not told her about any instances of abuse by respondent.  According to respondent's mother, ASC had wrongfully accused her of giving ASC a black eye.  ASC had previously testified that she had initially blamed respondent's mother for her black eyes before disclosing that respondent actually caused them.

Respondent testified and specifically denied ASC's allegations of sexual abuse.  He also denied threatening her with a gun and denied physically assaulting or disciplining her.  Respondent denied sexually abusing MDC.  According to respondent, ASC lied frequently.  When asked if he knew of any specific instances where ASC did not tell the truth, respondent answered: "Yes, when I found videos in my mother's old phone of her dancing inappropriate.  She lied about it.  She wasn't doing it."  Respondent also testified, "She had lied telling me she wasn't talking little [sic] boys on the phone and she was.  And, I caught her plenty of times."

At the conclusion of the trial, the referee found that jurisdiction had been established as to respondent with respect to both children. The referee specifically found that ASC testified credibly regarding the sexual abuse perpetrated by respondent and that MDC was also at a significant risk of harm in the care of respondent due to respondent's sexual abuse of MDC's sister.  Next, the referee found that there was clear and convincing evidence to support terminating respondent's

---

[2] ASC eventually agreed to spell another word that she knew for respondent's private part, and she stated "D-i-c-k, I think."

[3] Respondent is the father of both ASC and MDC, but the children have different mothers.

parental rights to both ASC and MDC under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*) based on the evidence that respondent sexually abused ASC and that both children would be at significant risk of sexual abuse if left in respondent's care. The referee found ASC's testimony consistent during the trial and consistent with the allegations in the petition, noting ASC's testimony about being beaten with a belt, shoes, and fists, as well as ASC's testimony of multiple instances of forced sexual acts that ASC described as being forced to "suck his private parts." The referee also expressed "concerns regarding credibility of the paternal grandmother as well as the father." Finally, the referee indicated that a separate best-interests hearing would be held. The trial court entered consistent orders of adjudication. Respondent, the children, and the children's mothers were referred to the Clinic for Child Study for a best-interests evaluation.[4]

At the best-interests hearing, the referee heard oral argument during which the assistant attorney general argued that ASC's testimony at trial supported a conclusion that termination was in the best-interests of each child and respondent's attorney argued that the report from the Clinic for Child Study examination raised doubts about the validity of ASC's allegations such that termination was not warranted. Respondent's attorney argued that the examining clinician had recommended against terminating respondent's parental rights, in part because of inconsistencies in ASC's descriptions of the alleged abuse and possible mental health concerns regarding ASC. Respondent's attorney maintained that ASC was not credible.

The referee found that despite the concerns raised by the Clinic for Child Study examination regarding the credibility of any sexual abuse allegations, ASC's testimony at trial—which was observed by the referee—was credible and established that respondent sexually abused ASC. The referee stated with respect to ASC's trial testimony and the referee's factual findings at the trial, "I don't have any doubts about the validity of those findings or the credibility of [ASC] as a witness." The referee concluded:

> And, in any case I do find that based on all of the evidence before the Court that it would be detrimental to both [ASC] and [MDC] to allow for an ongoing relationship with their father based on the findings of this Court, that he is capable of sexually abusing and did, in fact, sexually abuse one of his own children. And so for that reason the Court finds that he [sic] risk of harm in continuing a relationship with [respondent] far outweighs -- (voice echoing) in continuing that relationship. The Court finds that it would be in each of these children's best interest to have a full and complete severance of any relationship with [respondent].
>
> My recommendation that his parental rights are terminated.

The trial court entered orders terminating respondent's parental rights to each minor child. This appeal followed.

---

[4] The mothers were also respondents but termination of their parental rights was not being sought at this time. Because the mothers are not parties to the instant appeal, we need not discuss the details of the proceedings related to the allegations against them.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, respondent first argues that he was denied the effective assistance of counsel. "The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings . . . ." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Because no evidentiary hearing was held in the trial court regarding respondent's ineffective assistance of counsel claim, our review is "limited to mistakes apparent on the lower court record." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

To establish ineffective assistance of counsel, a respondent must show "that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App at 85. Demonstrating prejudice requires showing that "but for counsel's error, there is a reasonable probability" that the result of the of the proceeding would have been different. *Solloway*, 316 Mich App at 188. The respondent bears a heavy burden of proof to overcome the presumption that trial counsel's assistance was effective. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

Respondent argues that he was denied the effective assistance of counsel because his counsel did not attempt to admit the video of ASC's forensic interviews, or statements from these interviews, and did not cross-examine ASC about alleged inconsistencies between her trial testimony and forensic interviews. Respondent argues on appeal that his counsel should have undermined ASC's credibility by impeaching her with these inconsistencies and focusing on these inconsistencies in cross examining ASC. According to respondent, his trial counsel could have thereby demonstrated ASC's lack of knowledge about the mechanics of oral sex and ejaculation. Respondent further contends that his trial counsel could have also shown through such impeachment and cross-examination that ASC had been inconsistent about whether her younger sister, MDC, had also been abused by respondent. Additionally, respondent asserts that his trial counsel should have sought to admit a statement by MDC from her forensic interview that she felt safe with respondent.

All of respondent's appellate attacks on his trial counsel's performance involve the admission of evidence and the questioning of witnesses. Decisions regarding the presentation of evidence and questioning of witnesses are presumed to be matters of trial strategy. *Rockey*, 237 Mich App at 76. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77. There is a "strong presumption that counsel's performance constituted sound trial strategy." *In re Martin*, 316 Mich App at 87.

With respect to ASC's interview statements, respondent's sole argument for their admissibility is that ASC's "statements could have been admitted pursuant to MRE 801(d)(2), or the videos, pursuant to MRE 803(6), as the videos of forensic interviews are regularly conducted

activity of Kids Talk."[5]  Respondent does not provide any discussion of the legal admissibility of MDC's forensic interview statement about feeling safe with respondent.  Nonetheless, assuming without deciding that respondent is correct that these various statements were admissible, he still has failed to demonstrate that his trial counsel was ineffective.

Respondent presented his own testimony, along with the testimony of two other witnesses, to provide testimony contradicting ASC's allegations of abuse and to provide further testimony of ASC's general lack of truthfulness.  On appeal, respondent fails to explain how his trial counsel's apparent strategy of attacking ASC's credibility through the testimony of three witnesses rather than seeking to impeach ASC in the manner respondent now advocates was an objectively unreasonable strategy.  *Rockey*, 237 Mich App at 76; *In re Martin*, 316 Mich App at 85, 87.  The fact that a strategy was unsuccessful does not mean that it was objectively unreasonable, *Solloway*, 316 Mich App at 190, and respondent cannot demonstrate deficient performance merely by proposing that a different strategy should have been employed, *Rockey*, 237 Mich App at 76-77; *In re Martin*, 316 Mich App at 87.  Thus, respondent has not met his burden to establish that his trial counsel's performance was deficient.  *In re Martin*, 316 Mich App at 85.

Moreover, the alleged discrepancies, inconsistencies, and omitted evidence that respondent discusses on appeal are not so significant that they create a reasonable probability that but for trial counsel not pursuing the strategic course now proposed by respondent, the trial court would likely have reached a different conclusion on the most pertinent question of whether respondent committed acts of sexual abuse against ASC, which was the primary basis for the trial court's termination decision with respect to both minor children.  Our conclusion that respondent has not demonstrated the necessary prejudice is bolstered by the fact that the referee had been presented with other evidence attacking ASC's credibility through respondent's testimony and his other witnesses and that the subsequent admission of the Clinic for Child Study report questioning ASC's veracity did not change the referee's determination on ASC's credibility or factual findings.  Accordingly, respondent has also failed to establish the prejudice required to show ineffective assistance of counsel.  *In re Martin*, 316 Mich App at 85.

Having failed to establish either prong, respondent has not shown that his trial counsel was ineffective.  *Id*.

## B.  STATUTORY GROUNDS

Next, respondent challenges the trial court's statutory grounds ruling.

To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence.  This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination.  The trial court's factual findings are clearly erroneous if the evidence supports them,

---

[5] This appears to be a reference to a program that, among other things, conducts forensic interviews of suspected child victims of sexual abuse such as those that occurred in this case.  See *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 625 n 2; 853 NW2d 459 (2014).

but we are definitely and firmly convinced that it made a mistake. [*In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citations omitted).]

In this case, the trial court terminated respondent's parental rights to both children under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*), which provide as follows:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

Here, ASC testified that respondent committed multiple acts of sexual abuse involving oral penetration against her over the course of several years. ASC also testified that respondent held a gun to her head, threatened to kill her, and physically beat her when she refused his orders to engage in sexual acts. Based on our review of the record, we discern no clear error in the trial court's factual findings that respondent sexually abused ASC and that both minor children would be at significant risk of being sexually abused if returned to respondent's care. *In re Brown/Kindle/Muhammad Minors*, 305 Mich App at 635. As is often noted, "[h]ow a parent treats

one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks and citation omitted; alteration in original). Respondent's appellate arguments, which essentially amount to an attempt to relitigate the weight and strength of the evidence where those matters have already been resolved by the trial court, do not establish that the trial court's statutory grounds determination was clearly erroneous. *In re Brown/Kindle/Muhammad Minors*, 305 Mich App at 635. Our Supreme Court has long recognized that appellate courts are to give deference to the special ability of the trial court to judge the credibility of the witnesses before it, given the trial court's advantage as trier of fact in "being able to consider the demeanor of the witnesses in determining how much weight and credibility to accord their testimony." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## C. BEST INTERESTS

Finally, respondent challenges the trial court's best-interests determination.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review a trial court's best-interests determination for clear error. *In re Olive/Metts Minors*, 297 Mich App at 40.

At the best-interest stage, the focus is "on the child, not the parent." *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted).

In this case, as previously discussed, ASC provided testimony that respondent sexually abused her on multiple occasions since she was six years old and threatened her with a gun if she refused to comply. We do not discern clear error in the trial court's findings that ASC was sexually abused by respondent and that respondent's sexual abuse of his own child made the extreme risk of harm from an ongoing relationship between ASC or MDC and respondent such that it outweighed any benefit in continuing those relationships. The trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of each child. *In re Olive/Metts Minors*, 297 Mich App at 40.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly