*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

JUSTIN JEROME BARBER,

   Defendant-Appellant.

UNPUBLISHED
November 15, 2024
8:47 AM

No. 368064
Oakland Circuit Court
LC No. 2022-280740-FH

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Defendant-Appellant, Justin Jerome Barber, appeals as of right his jury-trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion). Barber was sentenced as a second-offense habitual offender, MCL 769.10, to an upward departure sentence of 10 to 22 1/2 years' imprisonment.[1] We affirm his conviction and sentence and remand for the trial court to make a ministerial correction to Barber's judgment of sentence.

## I. BACKGROUND

This case arises out of criminal sexual conduct by Barber involving his 24-year-old sister ("the victim"). The victim was adopted at birth and raised by adoptive parents. In early 2022, the victim contacted some of her biological family members, including her mother, Regina Stanley (Stanley). The victim "hop[ed] to have like a . . . second kind of family relationship." The victim met Stanley and Barber and other new family members for dinner at a restaurant. After the dinner, the victim continued speaking with family members by phone. The victim was "excited" to have a familial relationship with Barber.

---

[1] At sentencing, the trial court stated the term of imprisonment was "10 years not to exceed 22 and a half years. . . ." The Judgment of Sentence incorrectly displays the term of imprisonment as 10 to 22 years.

A week later, the victim visited Stanley's home to meet more relatives and stayed overnight. Later in the evening, the victim, Barber, and Barber's two-year-old daughter were in Barber's bedroom. The victim and Barber were drinking alcohol and watching television. The victim fell asleep. When she awoke, her pants and underwear were pulled down. Barber was on top of the victim, penetrating her vagina with his penis. The victim told Barber to stop and tried pushing him away, "but had a hard time because [Barber's daughter] was in the bed. . . ." The victim struggled for about a minute or less before freeing herself. The victim went to the bathroom to clean herself, then to Stanley's bedroom to try to sleep. The next morning, after leaving Stanley's home, the victim visited the emergency room, reported the incident, and received a sexual assault forensic examination. Law enforcement was contacted, and an investigation followed. Barber was charged, and found guilty of CSC-III. This appeal followed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Barber contends the evidence was insufficient to support the jury's determination he used force or coercion against the victim beyond a reasonable doubt. We disagree.

"This Court reviews de novo [a] defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. "A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). "This Court reviews de novo questions of constitutional law." *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014).

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021) (quotation marks and citation omitted). See also US Const, Ams V, VI, and XIV; Const 1963, art 1, §§ 17 and 20. This can be done with circumstantial evidence and inferences. *Kenny*, 332 Mich App at 403 (quotations marks and citations omitted). Additionally, "a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated." *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016).

Barber was convicted under MCL 750.520d(1)(b). There are two elements to this offense: "(1) defendant engaged in sexual penetration with the victim, and (2) [f]orce or coercion is used to accomplish the sexual penetration." *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012) (quotation marks and citation omitted). " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). "The existence of force or coercion is to be determined in light of all the circumstances, and includes, but is not limited to, acts of physical force or violence, threats of force, threats of retaliation, inappropriate medical treatment, or

concealment or surprise to overcome the victim." *Eisen*, 296 Mich App at 333 (quotation marks and citation omitted).

MCL 750.520d(1)(b) states: "Force or coercion includes but is not limited to any of the circumstances in section 520b(f)(*i*) to (*v*)." Such circumstances under MCL 750.520b(1)(f)(*i*) to (*v*) include:

> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

> (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

> (*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, 'to retaliate' includes threats of physical punishment, kidnapping, or extortion.

> * * *

> (*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

"[T]he term force includes, among other things, strength or power exerted upon an object." *People v Premo*, 213 Mich App 406, 409; 540 NW2d 715 (1995) (quotation marks and citation omitted).

Barber's argument that there was insufficient evidence to establish force or coercion beyond a reasonable doubt lacks merit. The victim testified that she fell asleep on Barber's bed while they were watching television and drinking. The next thing she remembered was waking up with her pants and underwear pulled down and Barber on top of her penetrating her vagina with his penis. The victim testified that she tried pushing Barber's body and arms away from her, telling him repeatedly "no" and "stop." The victim explained how difficult it was pushing Barber away while he penetrated her, and how she struggled for "about a minute or less" before she freed herself. This testimony demonstrates Barber used physical force to penetrate the victim. And while Barber took the stand and testified that their sexual encounter was consensual, "a victim's testimony may be sufficient to support" the elements of a crime "and need not be corroborated." *Solloway*, 316 Mich App at 181. Furthermore, "[t]he testimony of a victim need not be corroborated in prosecutions under [MCL 750.]520b to 520g." MCL 750.520h.

As to Barber's argument that the victim's testimony was neither specific nor credible, "witness credibility is a question for the fact-finder, and this Court does not interfere with the fact-finder's role." *Solloway*, 316 Mich App at 181-182. "[T]he credibility of witnesses is a matter of weight, not sufficiency." *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020) (citation omitted). There was sufficient evidence Barber used force to sexually penetrate the victim beyond a reasonable doubt to sustain his conviction. As such, Barber's due-process rights were not violated.

## B. SENTENCING

Barber contends the trial court's upward departure sentence of 10 to 22 1/2 years' imprisonment constituted an abuse of discretion. We disagree.

Regarding Barber's preserved proportionality argument, "[this Court] review[s] a trial court's upward departure from a defendant's calculated guidelines range for reasonableness." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). "[This Court] review[s] the reasonableness of a sentence for an abuse of the trial court's discretion." *Id*. "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). See also *People v Steanhouse*, 500 Mich 453, 459-460, 474-475; 902 NW2d 327 (2017).

"The conclusion that a reason given [for a departure] is objective and verifiable is reviewed as a matter of law." *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). "Whether the reasons given are substantial and compelling enough to justify the departure are reviewed for an abuse of discretion, as is the amount of the departure. A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Id*. (citations omitted). "[O]ur principle of proportionality requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted). To ensure a sentence is proportionate to the seriousness of the offense or offender "the [trial] judge, of course, must take into account the nature of the offense and the background of the offender." *Id*. at 472 (quotation marks and citation omitted). Specifically:

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight[.] [*People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted).]

"When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been[.]" *Id*. (quotation marks and citations omitted). "When reviewing a sentence that constitutes a departure from the recommended minimum guidelines range, the 'key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range[.]' " *People v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 367687); slip op at 4, quoting *Steanhouse*, 500 Mich at 475 (quotation marks and citation omitted).

In this case, the recommended guidelines minimum sentence range was 51 to 106 months in prison. The trial court imposed a minimum sentence of 10 years/120 months in prison and a maximum sentence of 22 1/2 years for the CSC-III conviction. The sentence imposed constituted

an upward departure of one year and two months/14 months)from the maximum of the applicable guidelines minimum sentencing range.

Of note is that the trial court scored Offense Variable (OV) 4 at the highest possible total points, acknowledging the "serious psychological injury" suffered by the victim. The trial court scored OV 10 at its highest possible point allocation, for the predatory conduct involved. The trial court scored OV 19 at its highest possible point allocation for threat of force against a person and interference with justice.

The trial court specifically recognized any upward departure sentence had to be "proportionate[.]" *Steanhouse*, 500 Mich at 474. In sentencing Barber, the court stated "this is the first time I have ever done this," before explaining the reason for the upward departure. The court provided several reasons for the departure sentence. The court stated the offense committed by Barber was "horrific," "shattered the family[,]" and was a "tragic situation for everyone involved[.]" Further, the court concluded the guidelines did not adequately reflect "the victim was a direct sibling of [] defendant who had sought out her biological family and was . . . the victim of a horrific sexual assault that has an unbelievable impact on herself, the family, the defendant's minor daughter, everybody involved. . . ." The court explained the victim was in the process of being "brought back into the family," but Barber's actions caused "an unfortunate destruction of a family unit[.]" The trial court agreed with the prosecution that the guidelines did not give enough weight to the betrayal of trust of the "vulnerable" the victim and the damage to the victim's relationship with her newly-discovered biological family. The trial court also adopted the prosecution's statements made during its request for an upward departure that the guidelines did not reflect the damage to the victim's mental health, as well as the trauma and fear she continues to experience. The trial court also agreed with the prosecution that the guidelines did not give enough weight to the threats made by Barber to "[victim's] very life in an attempt to discourage her from speaking. . . ." Critically, the trial court made these observations after scoring OV 4, OV 10, and OV 19 at their highest possible point allocations. Also, the trial court specifically addressed the relationship between the victim and Barber as biological siblings. See *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019)(quotation marks and citation omitted) (holding a trial court may consider factors "such as the relationship between the victim and the aggressor . . . .").

Under *Dixon-Bey*, 321 Mich App at 525, a relevant factor for determining whether a departure is proportionate is whether the guidelines reflect the seriousness of the crime, and the trial court stated here the guidelines did not. We struggle to conceptualize what more the trial court could have said here to explain its reason for the departure. The trial court stated "no amount of time from the Court's perspective that is ordered can repair what has been done for . . . anybody and . . . it's an unfortunate destruction of a family unit, especially one that was just in the pieces of having a new special person brought back into the family." The trial court cited to elements that were given inadequate weight in the guidelines and elements not considered at all. And contrary to Barber's assertions, the trial court reviewed Barber's criminal history, past employment, education level, and any cognitive deficiencies, which were documented in the presentence investigation report (PSIR).

It is helpful here to consider other case law involving sentences that were departures from the guidelines. In *Smith*, 482 Mich at 295-296, our Supreme Court concluded the trial court "judge

articulated adequate reasons to support *a* departure, but failed to justify the extent of the departure . . . ," where the recommended minimum sentence range for a defendant convicted of CSC-I, with no criminal history, was 9 to 15 years' imprisonment, and the judge sentenced Smith to a minimum of 30 years' imprisonment, which was "twice the highest minimum term [the] defendant could have received had the judge sentenced him within the guidelines recommendation." In *Dixon-Bey*, 321 Mich App at 522, the guidelines minimum sentence range was 12 to 20 years' imprisonment, and Dixon-Bey was sentenced to a minimum term of 35 years' imprisonment. This Court held that on the record presented to it, "nothing in [the] defendant's background supports the conclusion that a departure sentence was more proportionate than a sentence within the guidelines" where Dixon Bey's PRV score was zero, her prior misdemeanors were very old and all were nonviolent, and there was no basis to conclude that Dixon-Bey was what the trial court characterized as a "recidivist . . . criminal" who deserved a "greater . . . punishment" than that contemplated by the guidelines. *Id*. at 526.

Barber's sentencing is different than Dixon-Bey's and Smith's. As stated above, this is not a sentencing transcript devoid of any explanation of the departure or laden with biased statements from the sentencing judge. Further, while any additional amount of time in prison, even a day,[2] should not be taken lightly, it would appear the trial court readily understood this. We note that when presented with the difficult task of placing a number on the additional months appropriate for the incestual and heinous nature of Barber's offense, the trial court arrived at 14 months, rather than enhancing the minimum time in prison by years or decades. We cannot conclude Barber's above-guidelines sentence fell outside the range of reasonable and principled outcomes considering the facts and circumstances of this case. *Babcock*, 496 Mich at 269. Accordingly, because "a sentence that is proportionate is not cruel or unusual punishment," *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008), Barber's argument that his sentence was cruel and unusual punishment also fails.

### III. CONCLUSION

There was sufficient evidence that Barber used force or coercion to sexually penetrate the victim to sustain his conviction. Barber's due-process rights were not violated and we affirm his conviction. The trial court did not abuse its discretion by imposing a minimum sentence exceeding the guidelines minimum sentence range, and his sentence did not constitute cruel or unusual punishment under the United States Constitution or the Michigan Constitution.

We affirm Barber's conviction and sentence and remand for the trial court to make a ministerial correction to Barber's judgment of sentence. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young

---

[2] Credit here is due in part to Justice Markman's dissent in *People v Lockridge*, which notes that "a defendant's substantial rights would seem to have been affected by even a few months or weeks or days of unconstitutional incarceration." *People v Lockridge*, 498 Mich 358, 463 n 40; 870 NW2d 502 (2015) (MARKMAN, J., dissenting).

-6-