*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

OMAR CORTES,

      Defendant-Appellant.

UNPUBLISHED
May 13, 2026
10:42 AM

Nos. 370396; 370397
Kent Circuit Court
LC Nos. 23-005392-FC;
      23-005389-FC

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his sentences for first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). The trial court sentenced defendant to 25 to 40 years' imprisonment for the CSC-I conviction and 3 to 15 years' imprisonment for the CSC-II conviction. Defendant was also subjected to mandatory lifetime electronic monitoring (LEM) and registration on the Michigan sex offender registry, pursuant to the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the sexual abuse of his two minor cousins while he lived in their home and was entrusted with their care. The record reflects that defendant moved into his aunt's home when he was an adult. For several years, he regularly babysat the children, transported them to and from school, and was frequently left alone with them. With respect to the CSC-I conviction, the complainant testified that defendant sexually assaulted her repeatedly between the ages of four and eight, including digital and oral penetration. She further testified that when she was nine years old, defendant groped her breasts while her shirt was off. With respect to the CSC-II conviction, the second complainant testified that when she was approximately four or five years old, defendant rubbed her vagina over her clothing for several minutes while they were alone in the basement. Both complainants delayed disclosure. The first complainant disclosed the abuse in 2022 during therapy after experiencing significant emotional distress, which prompted a police investigation. The second complainant disclosed her abuse shortly thereafter.

Before trial, the prosecution offered defendant a plea agreement that would have resulted in a minimum sentence of seven years' imprisonment. The prosecution placed the offer on the record immediately before trial, and defense counsel confirmed that defendant had rejected it. Defendant personally affirmed on the record that his position had "always been I didn't do it" and that he did not wish to accept any plea offer.

Defendant waived his right to a jury trial and the matter proceeded to a consolidated bench trial. The trial court found defendant guilty of CSC-I and CSC-II. Defendant was thereafter convicted and sentenced as earlier described. Notably, the trial court initially imposed a minimum sentence of seven years' imprisonment for the CSC-I conviction. However, after the prosecution moved to correct an invalid sentence, the court resentenced defendant to the mandatory minimum term of 25 years' imprisonment as required by MCL 750.520b(2)(b).

In April 2024, defendant appealed by right both lower court files, which this Court consolidated.[1] Along with his appeal, defendant also moved to remand for a *Ginther*[2] hearing, which this Court granted.[3] Following the hearing, the trial court determined that defense counsel's representation of defendant was not deficient and that there was not a reasonable probability that defendant would have accepted the seven-year plea agreement. We now review defendant's claims on appeal.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he was denied the effective assistance of counsel because defense counsel failed to provide sufficient advice regarding the prosecution's plea offer.[4] We disagree.

An ineffective assistance of counsel claim presents "a mixed question of fact and constitutional law." *People v White*, 331 Mich App 144, 150; 951 NW2d 106 (2020) (quotation marks and citation omitted). Findings of fact are reviewed for clear error, but constitutional questions are reviewed de novo. *Id.* "This Court defers to the trial court's superior position to evaluate the credibility of witnesses who testified before it." *Id.*

---

[1] *People v Cortes*, unpublished order of the Court of Appeals, entered April 16, 2024 (Docket Nos. 370396 and 370397).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Cortes*, unpublished order of the Court of Appeals, entered January 24, 2025 (Docket Nos. 370396 and 370397).

[4] To the extent that defendant argues that defense counsel failed to advise him regarding the strengths and weaknesses of his case, that argument was not raised during the proceedings on remand and exceeds the scope of this Court's remand order. Accordingly, we decline to consider it. See MCR 7.205(E)(4); *Cortes*, unpub order, entered January 24, 2025, at 1 (stating that the "[p]roceedings on remand are limited to the issues raised in the motions to remand").

A defendant is entitled to the effective assistance of counsel, including when considering a plea agreement. *Id.* at 148; see also *Missouri v Frye*, 566 US 134, 141; 132 S Ct 1399; 182 L Ed 2d 379 (2012). To establish ineffective assistance of counsel, the defendant has the burden of establishing that "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *White*, 331 Mich App at 149 (quotation marks and citations omitted).

When a defendant claims ineffective assistance of counsel in the context of a plea offer, "defendant must show that the outcome of the plea process would have been different with competent advice." *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012). Specifically,

> [w]hen a defendant claims to be prejudiced by rejecting a plea offer on the basis of ineffective assistance of counsel, the defendant must show (1) that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) that the court would have accepted its terms; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*White*, 331 Mich App at 149-150 (quotation marks and citation omitted).]

In general, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 US at 145. Further, defense counsel has the obligation to "properly advise defendant regarding the nature of the charges or the consequences of the guilty plea and the possible defenses to the charges to which the defendant is pleading guilty, so defendant has the ability to make an intelligent and informed choice from among his alternative courses of action." *White*, 331 Mich App at 148 (quotation marks and citation omitted). Even so, "[e]ffective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Further, "[c]ounsel's performance should be evaluated at the time of the alleged error without the benefit of hindsight." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

The record does not support defendant's assertion that counsel failed to provide sufficient advice regarding the plea offer. At the *Ginther* hearing, defense counsel testified that he communicated the seven-year offer to defendant, advised him to "sleep on it," and emphasized the significant disparity between the offer and the potential 25-year mandatory minimum sentence that would be imposed if defendant were convicted. Defense counsel further testified that his approach was to have defendant weigh the risks of trial against the benefits of the plea, particularly with respect to sentencing exposure. The record reflects that defendant was aware of the mandatory minimum sentence associated with the CSC-I charge, which had been explained at arraignment and discussed during the proceedings. Ultimately, defense counsel communicated the plea offer, discussed the potential sentencing consequences, and advised defendant to seriously consider the offer. That advice was sufficient to allow defendant to make an informed decision. See *White*,

331 Mich App at 149-150. Thus, on this record, defendant has not established that his counsel's performance fell below an objective standard of reasonableness.

Even assuming arguendo that counsel's performance was deficient, defendant cannot establish prejudice. The record contains substantial evidence that defendant consistently maintained his innocence and was unwilling to accept a plea. Immediately before trial, defendant personally confirmed on the record that his position had "always been I didn't do it" and that he would not accept any plea offer. At the *Ginther* hearing, defendant and his counsel testified that defendant maintained this position throughout the proceedings. Our Supreme Court has explained that, when a defendant consistently maintains his innocence, it is generally not reasonably probable that the defendant would have accepted a plea offer. See *People v Douglas*, 496 Mich 557, 597-598; 852 NW2d 587 (2014). Defendant has thus failed to carry his burden to establish that he was prejudiced by defense counsel's allegedly insufficient advice. See *White*, 331 Mich App at 148; *Lockett*, 295 Mich App at 187. Accordingly, the trial court did not clearly err when it concluded it was not reasonably probable that defendant would have accepted the plea.[5] Because defendant has failed to establish either deficient performance or prejudice, his ineffective assistance claim fails.

## B. LIFETIME ELECTRONIC MONITORING

Defendant also argues that the imposition of LEM and lifetime sex offender registration are cruel or unusual punishment and that LEM amounts to an unconstitutional, unreasonable search. We disagree.

Generally, this Court reviews constitutional questions de novo; however, unpreserved constitutional issues are reviewed for "plain error affecting substantial rights." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (quotation marks and citations omitted). Under plain-error review, a defendant must demonstrate that (1) an error occurred, (2) that the error was clear and obvious, and (3) that the error affected their substantial rights. *Id*. "A clear and obvious error is one that is not subject to reasonable dispute." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (quotation marks and citation omitted). "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Burkett*, 337 Mich App at 635.

As recognized by defendant, this Court expressly concluded in *People v Hallak*, 310 Mich App 555, 568; 873 NW2d 811 (2015), rev'd on other grounds 499 Mich 879 (2016), that, although LEM is a search, it is not unreasonable as applied to a defendant convicted of CSC-II involving a

---

[5] Additionally, a trial court may not accept a guilty plea without a factual basis requiring the defendant to admit the underlying conduct. MCR 6.302(D)(1). Given defendant's repeated assertions of innocence, it is not reasonably probable that the trial court could have established such a basis or accepted the plea, which further undercuts any showing of prejudice.

minor. We are bound by this Court's ruling in *Hallak*. MCR 7.215(C)(2); MCR 7.215(J)(1).[6] Accordingly, because binding precedent forecloses defendant's constitutional challenges, defendant cannot establish plain error.

## C. LIFETIME SORA REGISTRATION

Lastly, defendant argues that SORA is prohibited under both Const 1963, art 1, § 16 and US Const, Am VIII because it is cruel and unusual punishment, both facially and as applied. We disagree.

As with defendant's claim regarding LEM, this issue was not raised in the trial court and is therefore unpreserved. *Burkett*, 337 Mich App at 635. Our review is thus for plain error affecting defendant's substantial rights. *Id*.

In *People v Kardasz*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165008); slip op at 1-2, our Supreme Court found that, "while the 2021 SORA is punishment, we do not find that its requirements are cruel or unusual, either under the facial challenge brought here or as applied to [the] defendant." Thus, to the extent that defendant argues that SORA is facially unconstitutional, his argument must fail.

We thus proceed to determining whether SORA is unconstitutional as applied to defendant in this matter. To do so, we must assess "whether it is unconstitutional under Michigan's prohibition against cruel or unusual punishment." *Id*. at ___; slip op at 33. A punishment is cruel or unusual if it is "grossly disproportionate." *People v Bullock*, 440 Mich 15, 34 n 17; 485 NW2d 866 (1992). In determining whether a punishment is grossly disproportionate, we consider "(1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation, which is a criterion specifically rooted in Michigan's legal traditions." *Kardasz*, ___ Mich at ___; slip op at 33 (quotation marks and citation omitted).

The circumstances in the present case are very similar to the circumstances in *Kardasz*. Thus, the reasoning established by our Supreme Court in *Kardasz* also applies to the present case. Regarding factor (1), the defendant in *Kardasz* was convicted of CSC-I. *Id*. at ___; slip op at 2. Similarly, defendant was convicted of CSC-I and CSC-II for the sexual assault of his two younger cousins when they were between the ages of 5 and 9. Defendant was over 18 years old when the assaults occurred. As explained by the *Kardasz* Court, these are "particularly grave offenses" that carry "a relatively moderate punishment" under SORA. *Id*. at ___; slip op at 34-35. Further, like the defendant in *Kardasz*, defendant in the present case produced insufficient evidence of his individualized level of risk of reoffending such that the registration requirements would be

---

[6] Defendant's primary argument for these issues is that this Court must revisit *Hallak*. However, this Court does not have the authority to revisit *Hallak* because our Supreme Court has granted leave to appeal in a controlling case. See *People v Ringle*, 28 NW3d 725 (Mich, 2025). See MCR 7.215(J)(1) and (J)(3)(b). Our analysis is therefore based on the controlling precedent presently in effect.

unconstitutional as applied to him. *Id*. at ___; slip op at 35. Accordingly, factor (1) weighs against a finding of disproportionality.

Regarding factor (2), like the defendant in *Kardasz*, defendant was convicted of CSC-I, "the most elevated Tier III offense." *Id*. at ___; slip op at 37. The *Kardasz* Courts held that "lifetime SORA registration for Tier III offenders is not a disproportionate punishment relative to the offense committed" or "relative to lifetime imprisonment". *Id*. Accordingly, this factor also weighs against a finding of gross disproportionality for defendant's as-applied challenge. *Id*. at ___; slip op at 37-38.

Regarding factor (3), our Supreme Court determined that there was no "clear national trend" moving away from lifetime SORA registration for "similarly situated offenders." *Id*. Accordingly, this factor also weighs against a finding of gross disproportionality for defendant's as-applied challenge. *Id*. at ___; slip op at 39-40. Finally, regarding factor (4), our Supreme Court specifically concluded that SORA "does not support rehabilitation." *Id*. Accordingly, regardless of defendant's particular circumstances in the present case, "this factor favors a finding of gross disproportionality." *Id*.

In sum, under the framework set forth in *Kardasz*, the first three factors weigh against a finding of gross disproportionality, while only the fourth favors it. Accordingly, defendant has not established that SORA's registration requirements are unconstitutional as applied to him. The trial court thus did not plainly err by ordering defendant to submit to lifetime sex offender registration pursuant to SORA.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

-6-